**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| AMERICAN CIVIL LIBERTIES UNION | ) | |
| and AMERICAN CIVIL LIBERTIES | ) | |
| UNION FOUNDATION, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:13-cv-1870 (JEB) |
| | ) | |
| v. | ) | |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS**

In this case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

plaintiffs, American Civil Liberties Union and American Civil Liberties Union Foundation, seek

that the defendant Central Intelligence Agency ("CIA") release to them a report that was

prepared by the Senate Select Committee on Intelligence ("SSCI" or "Committee"), and which

remains under SSCI's control.  Accordingly, the record that plaintiffs seek is a congressional

record, not an agency record, and is not covered by FOIA.  *See United We Stand America, Inc. v.*

*I.R.S.*, 359 F.3d 595, 597 (D.C. Cir. 2004).  As a result, this Court lacks jurisdiction over

plaintiffs' FOIA claim seeking release of this report, and this claim should be dismissed.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      PLAINTIFFS' FOIA REQUEST.**

By letter dated February 14, 2013, plaintiffs sent a FOIA request to the Central

Intelligence Agency, seeking "disclosure of the recently adopted report of the Senate Select

Committee on Intelligence relating to the CIA's post-9/11 program of rendition, detention, and

interrogation." ("SSCI Report" or "Report") Declaration of Neal Higgins, Director, Office of

Congressional Affairs, Central Intelligence Agency (Feb. 28, 2014) ¶ 4; Ex. A to Decl. By letter

dated February 22, 2013, the Agency advised plaintiffs that the requested Report was a

"Congressionally generated and controlled document that is not subject to the FOIA's access

provisions" and, accordingly, the CIA could not accept the request. Higgins Decl.¶ 5; Ex. B to

Decl.

Plaintiffs filed this lawsuit on November 26, 2013, and filed an amended complaint on

January 27, 2014. Paragraphs 18 through 24 of plaintiffs' amended complaint, entitled

"Plaintiffs' First FOIA Request," ("Request I") provide the factual allegations related to this

FOIA request. While plaintiffs' lawsuit also seeks release of several other documents, which are

currently being processed by the CIA for release of non-exempt information, if any, by May 22,

2014, the parties have agreed to brief the issue of whether the SSCI Report is an "agency record"

first. Because the SSCI Report is not an "agency record," however, this Court should dismiss all

of plaintiffs' causes of action related to Request I. *See* Plaintiffs' Amended Complaint for

Injunctive Relief (Jan. 27, 2014), ¶¶ 44-47 (Docket # 15).

## II.     THE SSCI REPORT AND SSCI CONTROL OVER ITS DRAFTING AND DISSEMINATION.

### A.     SSCI's Review of CIA Information and Early Drafting of the SSCI Report.

The SSCI Report was authored by the Senate Select Committee on Intelligence, and

concerns the CIA's former detention and interrogation program. Higgins Decl. ¶ 3. SSCI's

Chairman has described the 6000-page Report as "the most comprehensive intelligence oversight

activity ever conducted by this Committee." Letter from Dianne Feinstein, Chairman of SSCI, to

The President (Dec. 14, 2012) ("Feinstein Letter"); Ex. C to Higgins Decl.

The Report was drafted by SSCI after extensive discussions with the CIA to reach an accommodation that respected both the President's constitutional authority to protect classified information, and Congress's constitutional authority to conduct oversight of the Executive. Higgins Decl. ¶ 7.  Thus, SSCI and the CIA sought to properly protect both the highly sensitive and compartmented classified information at issue in the Report, information that necessarily came from the CIA; as well as the autonomy and control that SSCI maintained over the drafting, finalization, and dissemination of the Report itself.  *Id.* ¶¶ 6-9.  In order to best protect the highly sensitive and compartmented nature of the voluminous amount of classified information at issue, therefore, the CIA established a secure electronic reading room on CIA premises, and created a segregated network share drive, where designated SSCI personnel could review the highly classified materials and confidentially prepare and store their work product, including initial draft versions of the SSCI Report, in a secure environment.  *Id.* ¶ 7.

From the outset of this process, SSCI insisted that the work product created by SSCI personnel on the segregated shared drive would not become "agency records" even though the material was created and stored on a CIA computer system.  *Id.* ¶ 8.  Specifically, in a June 2, 2009 letter from the SSCI Chairman and Vice Chairman to the CIA Director, the Committee expressly stated that its work product, including "draft and final recommendations, reports, or other materials generated by Committee staff or Members, are the property of the Committee" and "remain congressional records in their entirety."  *Id.*  SSCI further provided that "disposition and control over these records, even after the completion of the Committee's review, lies exclusively with the Committee."  *Id.*  As such, the Committee explicitly stated that "these records are not CIA records under the Freedom of Information Act or any other law" and that

"[t]he CIA may not integrate these records into its records filing systems, and may not disseminate or copy them, or use them for any purpose without prior written authorization from the Committee." *Id.* The SSCI also stated that in response to a FOIA request seeking these records, the CIA should "respond to the request or demand based upon the understanding that these documents are congressional, not CIA, records." *Id.*

After reaching these accommodations, SSCI personnel used the segregated shared drive to draft the initial versions of its Report. *Id.* ¶ 9. Thereafter, and throughout the drafting process with the assistance of CIA information technology and security personnel, portions of the draft report were transferred from the segregated shared drive to secure SSCI facilities at the U.S. Capitol complex so that the Committee could complete the drafting process in its own workspaces. *Id.* Consequently, it is the Agency's understanding that the version of the Report that was ultimately adopted by the Committee and subsequently provided to the Agency does not reside on the shared drive. *Id.* Nonetheless, the restrictions governing the information on the shared drive have informed how the CIA has treated all versions of SSCI's work product in the Agency's possession, including the version of the Report that was adopted by the Committee and shared with the CIA, and SSCI has provided no indication that the Agency should treat the Report in a different manner. *Id.*

**B.     Provision of the Approved Report to the CIA.**

By letter dated December 14, 2012, SSCI Chairman Dianne Feinstein informed the President, the Acting CIA Director, and a few other senior Executive Branch officials that the Committee had completed its review of the CIA program, and stated that the Committee planned to provide a copy of the approved Report for their review. *See* Ex. C to Higgins Decl. The SSCI

Chairman also stated that she would be sending copies of the Report to appropriate Executive

Branch agencies for review and comment prior to finalization of the Report by SSCI for any

public release.  *Id.* Thus, the CIA understands that SSCI may revise the Report based on the

comments it receives and other factors, and the version at issue in this litigation may not be the

Committee's final product.  Higgins Decl. ¶ 14.

By email of December 13, 2012, the SSCI Staff Director had made clear that the

Committee would only provide copies of the Report to specific individuals identified in advance

by the agencies to the Chairman.  *Id.*  ¶ 11.  After receiving the letter from Chairman Feinstein,

the CIA's Office of Congressional Affairs reached out to Committee staff to secure the necessary

approvals for Agency personnel to gain access to the SSCI Report.  *Id.*  The CIA provided the

Committee with a list of Agency officers who would review the SSCI Report on behalf of the

CIA.  *Id.*  The Committee approved access for those individuals for the limited purpose of

providing edits and comments in response to the Report.  *Id.*

The CIA subsequently reviewed the Report, which is marked TOP SECRET, with

additional access restrictions noted based on the sensitive compartmented information contained

therein, and drafted a lengthy response.  *Id.* ¶ 12.  In order to facilitate the drafting of the

response, additional CIA officers obtained access to the Report, but access to the document has

remained confined to authorized CIA personnel with the requisite security clearances and a need-

to-know, and for the limited purpose of assisting the Agency in its interactions with the

Committee with respect to the Report and the Agency's response.  *Id.*  The CIA has not

integrated the SSCI Report into CIA files or record systems, and has consistently treated it as a

congressional document, rather than an agency record.  *Id.*

## ARGUMENT

I.   **THE SSCI REPORT IS A CONGRESSIONAL RECORD, NOT SUBJECT TO FOIA.**

A.   **Whether the Document is an "Agency Record" Presents a Jurisdictional Question.**

Under FOIA, an agency need only disclose "agency records."  5 U.S.C. § 552(a)(4)(B).

A court has jurisdiction to "enjoin the agency from withholding agency records and to order the

production of any agency records improperly withheld from the complainant."  5 U.S.C. §

552(a)(4)(B).  The question of whether a document is an "agency record" is, therefore,

jurisdictional.  *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136,

150 (1980) (federal jurisdiction in a FOIA case is dependent upon a showing that an agency has

(1) "improperly," (2) "withheld," (3) "agency records").  The SSCI Report at issue in this case is

not an "agency record," but a congressional document.  Because FOIA does not cover

congressional documents or records, this Court lacks subject matter jurisdiction over plaintiffs'

FOIA claims relating to the SSCI Report, and they should be dismissed.  *See United We Stand*

*America, Inc.*, 359 F.3d at 597.

In a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the

plaintiffs bear the burden of proving by a preponderance of the evidence that the Court has

subject matter jurisdiction."  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172,

176 (D.D.C. 2004).  Because subject matter jurisdiction focuses on a court's power to hear the

plaintiffs' claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure

that it is acting within the scope of its jurisdictional authority.  *Grand Lodge of Fraternal Order*

*of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  In deciding a Rule 12(b)(1) motion,

a Court need not limit itself to the allegations of the Complaint.  *See Hohri v. United States*, 782

F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, it may

"consider such materials outside the pleadings as it deems appropriate to resolve the question

whether it has jurisdiction in the case."  *Scolaro v. D.C. Board of Elections and Ethics*, 104 F.

Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197

(D.C.Cir.1992)).

**B.     An Analysis of the Relevant Factors Indicate that Congress Retains Control of the SSCI Report.**

In *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989), the Supreme

Court concluded that two requirements must be met in order for materials to qualify as "agency

records."  First, the agency must have either created or obtained the requested materials.  *Id.*

Second, "the agency must be in control of the requested materials at the time the FOIA request is

made."  *Id.* at 145.  While the CIA did not create the SSCI Report, it does not dispute that it

obtained it.  Because the SSCI Report is not under the CIA's control, however, it is not an

agency record.

The D.C. Circuit generally analyzes four factors to determine whether an agency

exercises sufficient control over requested documents to render them agency records:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*United We Stand America, Inc.*, 359 F.3d at 599 (citing *Burka v. United States Dep't of Health &*

*Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (other citations omitted).  In *Judicial Watch,*

*Inc. v. United States Secret Service*, 726 F.3d 208, 221 (D.C. Cir. 2013), the D.C. Circuit noted

that "the standard, four-factor control test does not apply to documents that an agency has . . . obtained from . . . a governmental entity not covered by FOIA: the United States Congress." Although *Judicial Watch* – unlike this case – did not concern documents obtained by an agency from Congress, the court nonetheless suggested that in such a case, "the first two factors of the standard test [are] effectively dispositive." *Id.*

In this case, all four factors favor a determination that the SSCI Report remains a congressional record. First, SSCI has indicated its intent to retain control over the copies of the Report that it provided to the CIA. Even before the drafting of the Report began, SSCI expressly stated that it intended for its work product, including draft versions of the Report, to remain congressional records not subject to FOIA. Higgins Decl. ¶ 6. The CIA was not to integrate the records from the segregated drive into its records filing system, or disseminate, copy, or use them for any purpose without prior authorization from the Committee. *Id.* ¶ 8. And, importantly, SSCI requested that in response to a FOIA request seeking these records, the CIA should respond based on an understanding that the documents are congressional, not CIA, records. *Id.*

While it is the CIA's understanding that the version of the Report that was circulated for review and comment by the SSCI Chairman to the President, the CIA, and other Executive Branch agencies, does not reside on the segregated shared drive at the CIA, the restrictions placed on the versions of SSCI's work product on that shared drive have informed the Agency's treatment of that version of the Report, and SSCI has provided no indication that should not be the case. *Id.* ¶ 9. The contemporaneous instructions from SSCI provide strong evidence of the Committee's intent to retain full control over the distribution, dissemination, and ultimate disposition of the Report. *See, e.g, Center for National Security Studies v. CIA*, 577 F. Supp.

584, 588-89 (D.D.C. 1983) (noting importance of contemporaneous and specific instructions

from Congress to agency limiting either use or disclosure of documents) (citing *Paisley v. CIA,*

712 F.2d 686, 694 (D.C. Cir. 1983) (*vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir.

1984)).

In addition, when SSCI provided the approved Report to the CIA on December 14, 2012,

it was for the specific and limited purpose of soliciting edits and comments for SSCI to consider

in making changes to the Report before finalizing it.  *See* Feinstein Letter (Ex. C to Higgins

Decl.).  That SSCI intended to review the comments provided and use them to perhaps amend

the Report makes it clear that while SSCI viewed this as a process of the Executive Branch

providing input for a congressional decision, it did not intend to relinquish control over the

Report or the final work product that would emerge after review and comment by the agencies

and the President.  Senator Feinstein's letter also underscores the fact that the version of the

SSCI Report that was circulated to the President and Executive Branch agencies (and which is at

issue in this case) was not a final document; rather, it was preliminary, with SSCI wholly in

control of the final, and as yet undecided, content of the Report.

SSCI also asserted control over who was allowed to review the Report within the

Agency.  SSCI Staff Director David Grannis, in an e-mail to the Office of Congressional Affairs

the day before Chairman Feinstein's letter was sent, detailed the explicit instruction of the

Chairman, as specified in a motion adopted by the Committee, that SSCI would only provide

copies of its Report to specific individuals identified to the Chairman herself – noting, by way of

reference, that another agency had a mere two names on its list of cleared individuals.  *See* Ex. D

to Higgins Decl. (Email from Staff Director Grannis to CIA (Dec. 13, 2012) (stating, "by explicit

instruction of the Chairman, and as specified in the motion, we will only provide copies of the

report to specific individuals who are identified in advance to the Chairman (through me)").

After receiving this e-mail, the CIA provided the Committee with a list of Agency officers who

would review the Report on behalf of the CIA; the Committee approved access for these

individuals for the limited purpose of providing edits and comments in response to the Report.

Higgins Decl. ¶ 11.

The second factor, the ability of the agency to use and dispose of the record as it sees fit,

also leads to a finding that SSCI retains control of the document.  As set forth above, the CIA

cannot use the Report freely; rather, SSCI has expressly limited its use.  The CIA has treated all

versions of the Report – including the approved Report that it received from SSCI for review –

consistent with SSCI's threshold condition that its work product would remain under

congressional control.  *Id.* ¶ 9.  These restrictions that the Committee put on the Report do not

allow the CIA to use the Report as it sees fit.  *Accord Judicial Watch, Inc. v. United States Secret

Service*, 726 F.3d 208, 218-19 (D.C. Cir. 2013) (concluding that Secret Service did not have

ability to use records "as it sees fit" when the Service could use records for only two limited

purposes: "to perform background checks to determine whether and under what conditions to

authorize [a] visitor's temporary admittance to the White House Complex," and "to verify the

visitor's admissibility at the time of the visit").

Finally, SSCI ultimately controls disposition and dissemination of the Report itself.  *Id.* ¶

15.  The Report contains information that was originated and classified by the Executive Branch,

and, as such, the Executive Branch does not consider SSCI's control over the document to

extend to control over classification of the information therein.  *Id.*  However, once a

declassification review is completed, SSCI would retain the sole authority to publicly release the

declassified version of the Report with the necessary redactions. *Id.* By contrast, even after

redacting classified information from the Report, the CIA cannot disseminate or otherwise

dispose of the Report without SSCI's approval. *Id.* Thus, notwithstanding the requirement for

the Agency to conduct a declassification review, the Report remains a congressional record that

is ultimately under the control of the SSCI. *Id.* The first two factors of the D.C. Circuit's test for

control over a document, therefore, favor a determination that the Report remains a

congressional record. And *Judicial Watch,* 726 F.3d at 221, suggests that in a case such as this,

which concerns a congressional document obtained by an agency, these first two factors are

dispositive.

     Should the Court wish to consider the final two factors of the test, however, these final

two factors – the extent to which Agency personnel have read or relied upon the document, and

the degree to which the document was integrated into the CIA's record system or files – also

weigh in favor of a finding that the SSCI Report is not an agency document. Because the

Agency's access to the Report has been granted by SSCI only for a limited purpose, review of or

reliance upon the Report has been restricted accordingly. *McErlean v. Dep't of Justice*, 1999

WL 791680, *11 (S.D.N.Y. Sept. 30, 1999) (use of records by only two attorneys handling case

weighed against "agency record" finding). And the limited use of the SSCI Report by

individuals within the CIA, contrasted against the vast scope and purpose of the Report itself,

weighs against a finding that the SSCI Report is an agency record. *Cf. Washington Post v. Dep't*

*of Homeland Security*, 459 F. Supp. 2d 61, 71 (D.D.C. 2006) (tying purpose of records to their

actual use by Secret Service; concluding that where use of records encompassed entire scope of

their purpose, analysis of factor favored finding of agency control).  Finally, as set forth in the

Higgins Declaration, the Report has not been integrated into the Agency's records systems.

Higgins Decl. ¶ 14.

Thus, the circumstances under which SSCI prepared the Report and provided it to the

CIA demonstrate a clear intent to retain control over access to and dissemination of the SSCI

Report, precluding the CIA's ability to use the document "as it sees fit."  The CIA, in turn, has

restricted Agency employees' use of and access to the document in consideration of this

congressional intent, and the document therefore has not been widely disseminated, relied upon

in the course of unrelated CIA business, or integrated into CIA records systems.

**B.      Policy Considerations Unique to the Congressional Context Require a
          Determination that the SSCI Report is not an "Agency Record."**

In *United We Stand America, Inc.*, the D.C. Circuit recognized "policy considerations

unique to the congressional context" that inform where to draw the line between congressional

documents and agency records.  These considerations include an important right of Congress "to

keep its own materials confidential."  *Id.*at 599 (citing *Goland v. CIA*, 607 F.2d 339, 346 (D.C.

Cir. 1978)).  This is the case because "Congress exercises oversight authority over the various

federal agencies, and thus has an undoubted interest in exchanging documents with those

agencies to facilitate their proper functioning in accordance with Congress' originating intent."

*Id.* Holding otherwise would force Congress "either to surrender its constitutional prerogative of

maintaining secrecy, or to suffer an impairment of its oversight role."  *Id.*  Thus, as the *United

We Stand* court noted, because "on all the facts of the case Congress' intent to retain control over

the document [wa]s clear," the D.C. Circuit held in *Goland* that the CIA's copy of a

congressional hearing transcript was a congressional document, and not an agency record. *United We Stand America,* 359 F.3d at 599 (quoting *Goland*, 607 F.2d at 348).

The same unique policy considerations apply to the SSCI Report in possession of the CIA. The SSCI Report was drafted by a congressional committee in its oversight role, and, from the beginning, the Committee stated that any work product that it created would remain the property of the Committee, and would "remain congressional records in their entirety." Higgins Decl. ¶ 8. The CIA was not to integrate the records into their records filing systems, and could not disseminate or copy them, or use them for any purpose without prior authorization from the Committee. *Id.* In addition, the Committee expressly provided that "these records are not CIA records under the Freedom of Information Act," and that in response to a FOIA request seeking these records, the CIA should "respond to the request or demand based upon the understanding that these are congressional, not CIA, records." *Id.* Moreover, in providing the Committee-approved Report to the CIA, SSCI required the CIA first to obtain authorization for the specific individuals who would review the Report. *Id.* ¶ 11. And when SSCI provided the approved Report to the CIA on December 14, 2012, it was for the specific and limited purpose of soliciting edits and comments for SSCI to consider in making changes to the Report before finalizing it. *See* Feinstein Letter (Ex. C to Higgins Decl.).

As in *Goland*, requiring the CIA to process and release the SSCI Report under FOIA, contrary to SSCI's express direction as to how the Agency was to treat the Report and its drafts, would force Congress "either to surrender its constitutional prerogative of maintaining secrecy, or to suffer an impairment of its oversight role." *Goland*, 607 F.2d at 346. Undermining these Congressional prerogatives is a result not required by FOIA, where, as here, Congress's intent to

retain control of the document is clear.  This Court may find that the SSCI Report is not an

"agency record" for these reasons alone.

## **CONCLUSION**

For the foregoing reasons, the SSCI Report remains within the control of SSCI, and is a

congressional record, not an agency record.  The Court therefore lacks subject matter over

plaintiffs' causes of action related to the SSCI Report, and they should be dismissed.


Dated: February 28, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN, Jr.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

 */s/ Vesper Mei*
VESPER MEI (D.C. Bar 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-4686
Fax:  (202) 616-8470
E-mail: vesper.mei@usdoj.gov

*Counsel for the Defendant*