**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

————————————————————— )
                                            )
AMERICAN CIVIL LIBERTIES        )
UNION and AMERICAN CIVIL         )
LIBERTIES UNION FOUNDATION  )
                                            )
    Plaintiffs,                       )
                                            )
        v.                             )     Civil Action No. 13-01870
                                            )     (JEB)
                                            )
CENTRAL INTELLIGENCE AGENCY,  )
                                            )
    Defendant.                       )
————————————————————— )

**DECLARATION OF NEAL HIGGINS**
**DIRECTOR, OFFICE OF CONGRESSIONAL AFFAIRS**
**CENTRAL INTELLIGENCE AGENCY**

I, NEAL HIGGINS, hereby declare and state:

    1.   I am the Director of the Office of Congressional

Affairs ("OCA") at the Central Intelligence Agency ("CIA or

"Agency").  I joined the CIA in June 2013 from the Senate Select

Committee on Intelligence ("SSCI or "Committee"), where I served

as a senior advisor to Senators Bill Nelson and Martin Heinrich,

as regional monitor for the Persian Gulf, and as budget monitor

for the Federal Bureau of Investigation.  Prior to joining the

SSCI staff, I served as Senator Nelson's legislative director.

Earlier in my career I worked as a member of the trial team

prosecuting Slobodan Milosevic and as an associate at the law

firm of Sullivan & Cromwell LLP.

2.     As Director of OCA, I am the principal advisor to the CIA Director on all matters concerning relations with the Congress.  My responsibilities include ensuring that the Congress is kept fully and currently informed of the Agency's intelligence activities via timely briefings and notifications, responding in a timely and complete fashion to congressional taskings and inquiries, tracking and advising on legislation that could affect the Agency, and educating CIA personnel about their responsibility to keep the Congress fully and currently informed.  One of the congressional oversight committees with which I regularly interact in this capacity is the Senate Select Committee on Intelligence, which authored the document described below.

3.     Through the exercise of my official duties, I am familiar with this civil action and the underlying Freedom of Information Act ("FOIA") requests.  The purpose of this declaration is to explain the basis of the Agency's determination that one of the documents at issue in this litigation, the version of a report[1] authored by the SSCI concerning the CIA's former detention and interrogation program ("SSCI Report" or "Report") that the Committee has shared with CIA, is a congressional record that is not subject to the FOIA.

---

[1] Although the SSCI "adopted" a version of the Report and shared it with CIA, the Agency's understanding is that the SSCI may make additional edits to the document; thus the version shared with CIA may not represent the final text of the Report if and when it is officially released by the Committee.

The statements in this declaration are based on my personal knowledge and information made available to me in my official capacity.  Specifically, these assertions are drawn from my own interactions with the SSCI with respect to the disposition of the Report, consultations with other CIA officials who were responsible for working with the SSCI as it drafted and disseminated the Report, a review of the relevant documentary record, and other information made available to me in my official capacity.

**I.   Plaintiffs' FOIA Request**

4.    By letter dated 14 February 2013, plaintiffs requested "disclosure of the recently adopted report of the Senate Select Committee on Intelligence relating to the CIA's post-9/11 program of rendition, detention, and interrogation."  A true and correct copy of this letter is attached hereto as Exhibit A.

5.    The Agency responded by letter dated 22 February 2013 and advised plaintiffs that the requested report was a "Congressionally generated and controlled document that is not subject to the FOIA's access provisions" and, accordingly, the CIA informed plaintiffs that it could not accept the request.  A true and correct copy of this letter is attached hereto as Exhibit B.  This lawsuit followed.[2]

---

[2] Plaintiffs have submitted two other FOIA requests seeking additional documents related to the subject matter of the instant request.  The CIA's responses to these FOIA requests will be briefed separately.

## II.  Creation of the SSCI Report

6.    From the beginning of its interactions with the CIA
with respect to the Report, the SSCI demonstrated that it
intended for the Report to remain a congressional record that
would not be subject to the provisions of the FOIA.  In its
congressional oversight role, the SSCI advised the CIA in March
2009 that it planned to conduct a review of the CIA's former
detention and interrogation program.  At the outset, the
Committee requested access to broad categories of CIA documents
related to how the program was created, operated, and
maintained, which would form the basis of its review.  Due to
the volume and the highly sensitive and compartmented nature of
the information at issue, the CIA determined that in order to
properly safeguard classified equities, the SSCI's review of
Agency records would need to take place at CIA facilities.

7.    Following discussions with the Committee, the CIA and
SSCI reached an inter-branch accommodation that respected both
the President's constitutional authorities over classified
information and the Congress's constitutional authority to
conduct oversight of the Executive.  Under this accommodation,
the CIA established a secure electronic reading room at an
Agency facility where designated SSCI personnel could review
these highly classified materials.  In addition, the CIA created
a segregated network share drive at this facility that allowed

Members of the Committee and staffers to prepare and store their work product, including draft versions of the SSCI Report, in a secure environment.

8.   One key principle necessary to this inter-branch accommodation, and a condition upon which SSCI insisted, was that the materials created by SSCI personnel on this segregated shared drive would not become "agency records" even though this work product was being created and stored on a CIA computer system.  Specifically, in a 2 June 2009 letter from the SSCI Chairman and Vice Chairman to the CIA Director, the Committee expressly stated that the SSCI's work product, including "draft and final recommendations, reports or other materials generated by Committee staff or Members, are the property of the Committee" and "remain congressional records in their entirety."[3] The SSCI further provided that the "disposition and control over these records, even after the completion of the Committee's review, lies exclusively with the Committee."  As such, the Committee stated that "these records are not CIA records under the Freedom of Information Act or any other law" and that "[t]he CIA may not integrate these records into its records filing

---

[3] The other portions of this letter reflect confidential negotiations between the SSCI and CIA over other, unrelated conditions pertaining to the SSCI's review, and therefore this confidential correspondence, which is itself a congressional record, is not attached to this declaration.  The quoted provisions in this paragraph are true and accurate quotations from the letter, and are being included in this declaration after consultation with the SSCI staff.

systems, and may not disseminate or copy them, or use them for
any purpose without prior written authorization from the
Committee."  Finally, the SSCI requested that in response to a
FOIA request seeking these records, the CIA should "respond to
the request or demand based upon the understanding that these
are congressional, not CIA, records."

    9.   Based on this inter-branch accommodation, SSCI
personnel used the segregated shared drive to draft the document
that is the subject of this litigation.  As sections of the
report reached a certain stage, the SSCI worked with the CIA
information technology and security personnel to transfer these
drafts from the segregated shared drive to the SSCI's secure
facilities at the U.S. Capitol complex so that the Committee
could complete the drafting process in its workspaces.
Presumably, the SSCI made additional changes to these draft
sections following the transfers.  Thus, it is the Agency's
understanding that the adopted version of the Report that SSCI
subsequently provided to the Agency does not reside on the
segregated shared drive described in the preceding paragraph.
Nonetheless, the restrictions governing the information on that
shared drive have informed how the CIA has treated all versions
of the SSCI's work product in the Agency's possession, including
the version of the Report adopted by the SSCI and shared with

the CIA, and the SSCI has provided no indication that the Agency should treat the Report in a different manner.

**III. Transmission of the SSCI Report to the CIA**

10.  On 14 December 2012, the SSCI Chairman informed the President, Acting CIA Director, and other senior Executive Branch officials that the Committee had completed its review of the CIA program and stated that the Committee planned to provide a copy of the approved Report for their review.  A true and correct copy of this letter is attached hereto as Exhibit C. Additionally, the SSCI Chairman stated that she planned to send copies of the report to appropriate Executive Branch agencies for their review and response.  After considering any "suggested edits or comments" from these agencies, the SSCI Chairman advised that she "intend[ed] to present the report with any accepted changes again to the Committee to consider how to handle any public release of the report, in full or otherwise."

11.  After receiving this letter, the CIA's Office of Congressional Affairs reached out to Committee staff in order to secure the approvals necessary for Agency personnel to gain access to the SSCI Report.  By email dated 13 December 2012, the SSCI Staff Director advised the then-Director of OCA and personnel from other federal agencies involved in the review that, upon the explicit instruction of the SSCI Chairman, the Committee would only provide the copies of the Report to

specific individuals identified in advance to the Chairman by
the agencies.  A true and correct copy of this email (with
appropriate redactions) is attached hereto as Exhibit D.  Soon
thereafter, the CIA provided the Committee with a list of Agency
officers who would review the SSCI Report on behalf of the CIA.
The Committee approved access for these individuals for the
limited purpose of providing edits and comments in response to
the Report.

12.  The Report that the Agency received is marked TOP
SECRET, with additional access restrictions noted based on the
sensitive compartmented information contained therein.  The CIA
subsequently conducted a thorough review of the Report and
drafted a lengthy response, a process that necessitated
increasing the number of officers who had access to the Report
or portions of the Report.  However, access to the document has
remained confined to authorized CIA personnel with the requisite
security clearances and a need-to-know, and for the limited
purpose of assisting the Agency in its interactions with the
Committee with respect to the Report and the Agency's response.[4]
Additionally, the CIA has not integrated the SSCI Report into
the CIA files or records systems and has consistently treated it
as a congressional document rather than an agency record.

---

[4] In addition, a small number of Agency personnel have reviewed portions of
the Report for limited purpose of assessing the proper classification of its
contents or responding to the present FOIA request.

**IV.  The CIA's Determination that the SSCI Report Is a Congressional Record**

13.  As the foregoing demonstrates, the CIA understood from the beginning, and the Committee has consistently made clear, that the SSCI retained control over the Report.  From the outset, the SSCI indicated that the records it created on the segregated shared drive during the course of its review, including any reports resulting from its inquiry, were to be considered congressional records that are not subject to the dictates of the FOIA.  This understanding was an important element of the inter-branch accommodation that was reached.

14.  When the SSCI later provided the CIA with the copy of the adopted Report, it did so for the sole purpose of allowing the Agency to provide "suggested edits or comments," and the Committee continued to exhibit its intent to control the document.  Before providing the Report to the CIA for purposes of CIA's review and comment, the Committee required that the Agency provide a list of personnel who would access the Report for that limited purpose.  Further, following its transmittal, the CIA has not integrated the SSCI Report into the Agency's file systems, and it has relied upon it for the limited purpose permitted by the SSCI.[5]  As such, the Committee's intent to control the Report has been demonstrated throughout the

---

[5] As noted above, a small number of CIA personnel have also reviewed portions of the Report for limited purpose of assessing the proper classification of its contents or responding to the present FOIA request.

document's existence, from its creation through its transfer to
the CIA.  In addition, the CIA understands that the SSCI may
revise the Report based on the comments it has received and
other factors, and therefore the version at issue in this
litigation may not be the Committee's final product.  Based on
all of these circumstances, the Agency does not believe that it
has any authority to publicly release this non-final version of
the Report without the express approval of the SSCI, further
demonstrating that it is not an agency record for the purposes
of FOIA.

15.  Finally, it should be noted that although the Report
is a congressional record that is under the control of the SSCI,
it contains information that was originated and classified by
the Executive Branch.  As such, the Executive Branch does not
consider SSCI's control over the document to extend to control
over the classification of the information therein.  Rather, the
SSCI would be required to submit its Report for a
declassification review before it could publicly release the
Report.  Once that declassification review was completed, the
SSCI would retain the sole authority to publicly release that
declassified version of the Report with the necessary
redactions.  In contrast, even after redacting classified
information from the Report, the CIA would not be free to
disseminate or otherwise dispose of it without approval of the

SSCI.  Thus, notwithstanding the requirement for the Agency to conduct a declassification review, the Report remains a congressional record that is ultimately under the control of the SSCI.

<div style="text-align:center">*    *    *</div>

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of February 2014.

_____
Neal Higgins
Director, Office of Congressional
  Affairs
Central Intelligence Agency

Exhibit A

NATIONAL SECURITY PROJECT

ACLU AMERICAN CIVIL LIBERTIES UNION FOUNDATION

F-2013-00829

February 14, 2013

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: 703.613.3007

To the Information and Privacy Coordinator:

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

The accompanying FOIA Request was submitted in hard-copy format as an overnight parcel via USPS on February 13, 2013. At 11:07 this morning, I received an electronic notice from the USPS that a delivery had been attempted but failed at the above mailing address. A representative at the CIA's FOIA hotline informed me that a member of your team will soon pick up the parcel from the post office holding it. In the meantime, please accept this Fax version of the Request as a substitute, and begin processing immediately.

FEB 14 2013

Zachary Evan Levine
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
Tel: 212.284.7322
Fax: 212.549.2654
Email: zlevine@aclu.org

C05966589  16:33 FROM:                UNCLASSIFIED              TO:703 613 3007        P.2/11

NATIONAL SECURITY
PROJECT



February 13, 2013

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

Office of Information Programs and Services, A/GIS/IPS/RL
U.S. Department of State
Washington, D.C. 20522-8100

Carmen L. Mallon, Chief of Staff
Office of Information Policy
U.S. Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530-0001

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET   18T H F
NEW YORK  NY 10004 2400
T/212 549 2500
WWW.ACLU ORG

OFFICERS AND DIRECTORS
S. SAN N. HERMAN
PRESIDENT

ANTHONY D. HOMERO
EXECUTIVE DIRECTOR

Re:     <u>Request Under Freedom of Information Act /
        Expedited Processing Requested</u>

To Whom It May Concern:

        This letter constitutes a request ("Request") pursuant to the
Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and various
relevant implementing regulations, *see* 32 C.F.R. § 1900 (Central
Intelligence Agency); 28 C.F.R. § 16.1 (Department of Justice); 32 C.F.R.
§ 286 (Department of Defense); and 22 C.F.R. § 171.10 *et seq.*
(Department of State).  The Request is submitted by the American Civil
Liberties Union and the American Civil Liberties Union Foundation
(together, the "ACLU" or the "Requesters").[1]

---

[1] The American Civil Liberties Union is a non-profit, 26 U.S.C. § 501(c)(4)
membership organization that educates the public about the civil liberties implications of
pending and proposed state and federal legislation, provides analysis of pending and
proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their
legislators.  The American Civil Liberties Union Foundation is a separate 26 U.S.C.

1

Requesters seek the disclosure of the recently adopted report of the Senate Select Committee on Intelligence relating to the CIA's post-9/11 program of rendition, detention, and interrogation (the "Report").

\* \* \*

The Senate Select Committee on Intelligence ("SSCI") voted on Thursday, December 13, 2012, to approve a report detailing the findings of its three-year investigation of the CIA's rendition, detention, and interrogation program in the years after 9/11. According to the SSCI chairperson, the Report—which totals nearly 6,000 pages—is "the most definitive review" to be conducted of the CIA's program, including the Agency's use of so-called "enhanced interrogation techniques." *See, e.g.*, Benjamin Wittes, *Senate Intelligence Committee Interrogation Report Approved—But Not Released*, Lawfare, Dec. 14, 2012, http://bit.ly/Vw1twf; Natasha Lennard, *Senate-Approved CIA Torture Report Kept Under Wraps*, Salon, Dec. 14, 2012, http://bit.ly/SWHsgh; Scott Shane, *Senate Panel Approves Findings Critical of Detainee Interrogations*, N.Y. Times, Dec. 13, 2012, http://nyti.ms/VwdORk; Carrie Johnson, *Report On CIA Interrogation Tactics Revives Torture Debate*, NPR, Dec. 13, 2012, http://n.pr/VDKWm0; Mark Hosenball, *Senators to Vote on Probe of CIA Interrogation Program*, Reuters, Dec. 6, 2012, http://reut.rs/RbuL3T.

In the course of its investigation, which began in 2009, the SSCI reviewed millions of pages of records documenting the day-to-day operations of the CIA's interrogation program. The Commission's intent was to produce "a detailed, factual description of how interrogation techniques were used, the conditions under which detainees were held, and the intelligence that was—or wasn't—gained from the program." Joint Statement from Senator Dianne Feinstein, Chairman, Senate Intelligence Committee, and Senator Carl Levin, Chairman, Senate Armed Services Committee, Apr. 27, 2012, http://1.usa.gov/IKjkq0.

The Report is of clear and enormous public importance. The American public has a right to know the full truth, based on a comprehensive government investigation, about the torture and other abusive treatment of detainees authorized by officials at the highest levels of our government.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

§ 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes the American Civil Liberties Union's members to lobby their legislators.

2

C05966589   16:35 FROM:                   UNCLASSIFIED          TO:703 613 3007         P.4/11

According to SSCI members, the Report puts to rest claims that the use of torture led to the capture of Osama bin Laden, a topic that continues to generate public debate. The Committee chairperson, Senator Feinstein, has said—based on her familiarity with the Committee's investigation—that "none of [the evidence that led to bin Laden] came as a result of harsh interrogation practices." Scott Shane and Charlie Savage, *Bin Laden Raid Revives Debate on Value of Torture*, N.Y. Times, May 3, 2011, http://nyti.ms/jDg9Ob; Mark Hosenball, *Exclusive: Senate Probe Finds Little Evidence of Effective "Torture,"* Reuters, Apr. 7, 2012, http://reut.rs/ItLmpH.

Release of the Report is therefore critical to ensure timely public access to a congressional investigative report of historic significance. Other official investigative reports have been made available to the public: for example, the Senate Armed Services Committee Report, which concerned the Department of Defense's involvement in detainee abuses, was released in full in April 2009. The SSCI's Report likewise ought to be released.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

## I. Record Requested

Requesters seek disclosure of the SSCI's recently adopted report on the CIA's rendition, detention, and interrogation program in the years following 9/11.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that the Report be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession.

## II. Application for Expedited Processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 32 C.F.R. § 1900.34(c); 28 C.F.R. § 16.5(d); 32 C.F.R. § 286.4(d)(3); and 22 C.F.R. § 171.12(b). There is a "compelling need" for these records, as defined in the statute and regulations, because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity. 5 U.S.C. § 552(a)(6)(E)(v); *see also* 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii); 22 C.F.R. § 171.12(b)(2). In addition, the records sought relate to a "breaking news story of general public interest." 32 C.F.R. § 1900.34(c)(2) (providing for expedited processing when "the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity"); *see also* 32 C.F.R. § 286.4(d)(3)(ii)(A); 22 C.F.R. § 171.12(b)(2)(i).

3.

A.   *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and relevant regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii); 22 C.F.R. § 171.12(b)(2). *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding that a non-profit, public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information" (internal citation omitted)); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding Leadership Conference—whose mission is "to serve as the site of record for relevant and up-to-the-minute civil rights news and information" and to "disseminate[] information regarding civil rights and voting rights to educate the public [and] promote effective civil rights laws"—to be "primarily engaged in the dissemination of information").

Dissemination of information about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. The ACLU disseminates this information to educate the public and promote the protection of civil liberties. The ACLU's regular means of disseminating and editorializing information obtained through FOIA requests include: a paper newsletter distributed to approximately 450,000 people; a bi-weekly electronic newsletter distributed to approximately 300,000 subscribers; published reports, books, pamphlets, and fact sheets; a widely read blog; heavily visited websites, including an accountability microsite, http://www.aclu.org/accountability; and a video series.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news.[2] ACLU attorneys are interviewed frequently for news stories about

[2] *See, e.g.*, Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement*, Sept. 14, 2012, http://www.aclu.org/node/36742; Press Release, American Civil Liberties Union, *FOIA Documents Show FBI Using "Mosque Outreach" for Intelligence Gathering*, Mar. 27, 2012, http://www.aclu.org/national-security/foia-documents-show-fbi-using-mosque-outreach-intelligence-gathering; Press Release, American Civil Liberties Union, *FOIA Documents Show FBI Illegally Collecting Intelligence Under Guise of "Community Outreach*," Dec. 1, 2011, http://www.aclu.org/national-security/foia-documents-show-fbi-illegally-collecting-intelligence-under-guise-community; Press Release, American Civil Liberties Union, *FOIA Documents from FBI Show Unconstitutional Racial Profiling*, Oct. 20, 2011, http://www.aclu.org/national-security/foia-documents-fbi-show-unconstitutional-racial-profiling; Press Release, American Civil Liberties Union, *Documents Obtained by ACLU Show Sexual Abuse of Immigration Detainees is Widespread National Problem*, Oct. 19,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

4

C05966589 16:34 FROM:                        UNCLASSIFIED      TO:703 613 3007      P.6/11

documents released through ACLU FOIA requests.[3]

The ACLU website specifically includes features on information
about actual or alleged government activity obtained through FOIA.[4]  For
example, the ACLU maintains an online "Torture Database," a
compilation of over 100,000 FOIA documents that allows researchers and
the public to conduct sophisticated searches of FOIA documents relating
to government policies on rendition, detention, and interrogation.[5]  The
ACLU also maintains a "Torture FOIA" webpage containing commentary
about the ACLU's FOIA request, press releases, and analysis of the FOIA
documents.[6]  (That webpage also notes that the ACLU, in collaboration
with Columbia University Press, has published a book about the
documents obtained through FOIA. *See* Jameel Jaffer & Amrit Singh,
*Administration of Torture: A Documentary Record from Washington to
Abu Ghraib and Beyond* (Columbia Univ. Press 2007)).  Similarly, the
ACLU's webpage about the Office of Legal Counsel ("OLC") torture
memos obtained through FOIA contains commentary and analysis of the
memos; an original, comprehensive chart summarizing the memos; links
to web features created by ProPublica (an independent, non-profit,
investigative-journalism organization) based on the ACLU's information
gathering, research, and analysis; and ACLU videos about the memos.[7]  In

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

2011, http://www.aclu.org/immigrants-rights-prisoners-rights-prisoners-
rights/documents-obtained-aclu-show-sexual-abuse; Press Release, American Civil
Liberties Union, *New Evidence of Abuse at Bagram Underscores Need for Full
Disclosure About Prison, Says ACLU*, June 24, 2009, http://www.aclu.org/national-
security/new-evidence-abuse-bagram-underscores-need-full-disclosure-about-prison-
says-aclu.

[3] *See, e.g.,* Carrie Johnson, *Delay in Releasing CIA Report Is Sought; Justice Dep't
Wants More Time to Review IG's Findings on Detainee Treatment*, Wash. Post, June 20,
2009 (quoting ACLU staff attorney Amrit Singh); Peter Finn & Julie Tate, *CIA Mistaken
on 'High-Value' Detainee, Document Shows*, Wash. Post, June 16, 2009 (quoting ACLU
staff attorney Ben Wizner); Scott Shane, *Lawsuits Force Disclosures by C.I.A.*, N.Y.
Times, June 10, 2009 (quoting ACLU National Security Project director Jameel Jaffer);
Joby Warrick, *Like FBI, CIA Has Used Secret 'Letters,'* Wash. Post, Jan. 25, 2008
(quoting ACLU staff attorney Melissa Goodman).

[4] *See, e.g.,* http://www.aclu.org/national-security/predator-drone-foia;
http://www.aclu.org/national-security/anwar-al-awlaki-foia-request;
http://www.aclu.org/torturefoia; http://www.aclu.org/olcmemos;
http://www.aclu.org/mappingthefbi; http://www.aclu.org/national-security/bagram-foia;
http://www.aclu.org/safefree/torture/csrtfoia.html;
http://www.aclu.org/natsec/foia/search.html;
http://www.aclu.org/safefree/nsaspying/30022res20060207.html;
http://www.aclu.org/patriotfoia; http://www.aclu.org/spyfiles;
http://www.aclu.org/safefree/nationalsecurityletters/32140res20071011.html; and
http://www.aclu.org/exclusion.

[5] http://www.torturedatabase.org.

[6] http://www.aclu.org/torturefoia.

[7] http://www.aclu.org/safefree/general/olc_memos.html.

5

C05966589   UNCLASSIFIED   TO:703 613 3007   P.7/11

addition to websites, the ACLU has produced an in-depth television series on civil liberties, which has included analysis and explanation of information the ACLU has obtained through FOIA.

The ACLU plans to analyze and disseminate to the public the information gathered through this Request. The record requested is not sought for commercial use, and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.[8]

> B.     *The record sought is urgently needed to inform the public about actual or alleged government activity.*

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The SSCI Report is urgently needed to inform the public about actual or alleged government activity; moreover, this document relates to a breaking news story of general public interest, specifically, the CIA's rendition, detention and interrogation program and its authorization of abusive techniques between 2002 and 2009. *See* 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii)(A); 22 C.F.R. § 171.12(b)(2).

We make this Request to further the public's understanding of the CIA's program and the role of senior officials in conceiving of and authorizing the use of abusive interrogation techniques in the wake of September 11, 2001. The public has and continues to manifest an abiding interest in the conduct of the CIA and other executive agencies with respect to individuals seized, detained, and interrogated for counterterrorism purposes. While U.S. intelligence officials have acknowledged that the CIA used harsh and coercive interrogation techniques, Congress's investigation sets forth the most comprehensive account to date of what happened and why, and it is imperative that its findings be made public.

Over the past year, national news stories have highlighted the significance of the SSCI investigation for the public record. In the run-up to the committee vote last December, a host of articles and editorials were published emphasizing how important it is for the Report to be made public. *See, e.g.,* Ed Pilkington, *Senate Under Pressure to Release Mammoth Report on CIA Interrogation,* The Guardian (U.K.), Dec. 13, 2012, http://bit.ly/VECh2J; *US Senate Panel to Vote on CIA Interrogations Report,* AFP, Dec. 11, 2012, http://bit.ly/Z0ah1A; Carolyn

---

[8] In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools, and organizations through a variety of means, including their own websites, publications, and newsletters. Further, the ACLU makes archived materials available at the American Civil Liberties Union Archives at Princeton University Library.

6

UNCLASSIFIED

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Lochhead, *Dianne Feinstein Torture Report May Conflict with Bin Laden Movie*, SFGate Blog, Dec. 11, 2012, http://bit.ly/USwxpI; Matt Bewig, *Senate Report on CIA Torture Techniques May Remain Secret*, AllGov, Dec. 10, 2012, http://bit.ly/VLaXWE; Jim Kouri, *Senate Democrats Urge Probe of CIA Interrogations During Bush Years*, Examiner, Dec. 7, 2012, http://exm.nr/TZTQuk; Mark Hosenball, *Senators to Vote on Probe of CIA Interrogation Program*, Reuters, Dec. 6, 2012, http://reut.rs/RbuL3T; Editorial, *Our View: Snowe, Committee Should Release Torture Report*, Portland Press Herald, Nov. 23, 2012, http://bit.ly/RYpVnf. For the past several weeks, nationwide media outlets have continued to call for the Report's public release, emphasizing its critical importance. *See, e.g.*, Mark Hosenball, *CIA Nominee Had Detailed Knowledge of "Enhanced Interrogation Techniques,"* Reuters, Jan. 30, 2013, http://reut.rs/XgF44v; Matt Sledge, *John Brennan Nomination Seen As Opening to Push for CIA Torture Report Release*, Huffington Post, Jan. 8, 2013, http://huff.to/VD00SR; Conor Friedersdorf, *Does it Matter if John Brennan was Complicit in Illegal Torture?*, The Atlantic, Jan. 8, 2013, http://bit.ly/Wqxu5u; Adam Serwer, *Obama's CIA Pick to Face Questions on Torture*, Mother Jones, Jan. 8, 2013, http://bit.ly/VNAflw.

The contents of the Report will inform urgent and ongoing debate about the CIA interrogation program. The SSCI Report provides "the public with a comprehensive narrative of how torture insinuated itself into U.S. policy," a narrative that "is of more than historical interest" as the nation's lawmakers move forward. Editorial, *Free the Torture Report*, L.A. Times, Apr. 27, 2012, http://lat.ms/ImBMZ9. *See also* Scott Shane, *No Charges Filed on Harsh Tactics Used by the C.I.A.*, N.Y. Times, Aug. 30, 2012, http://nyti.ms/RuZNRX; Mark Hosenball, *Exclusive: Senate Probe Finds Little Evidence of Effective "Torture,"* Reuters, Apr. 27, 2012, http://reut.rs/ItLmpH; Marcy Wheeler, *Right on Cue, the Counter-Argument to the Torture Apology Comes Out*, Empty Wheel, Apr. 27, 2012, http://bit.ly/Ihha6s.

Expedited processing should be granted.

## III. Application for Waiver or Limitation of Fees

### A.     Release of the record is in the public interest.

We request a waiver of search, review, and reproduction fees on the grounds that disclosure of the requested record is in the public interest because it is likely to contribute significantly to the public understanding of the United States government's operations or activities and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 1900.13(b)(2); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); and 22 C.F.R. § 171.17.

7

C05966589   16:35 FROM:                    UNCLASSIFIED          TO:703 613 3007        P.9/11

The SSCI Report will significantly contribute to public understanding of the government's operations or activities. Moreover, disclosure is not in the ACLU's commercial interest. Any information obtained by the ACLU as a result of this FOIA request will be available to the public at no cost. *See* 32 C.F.R. § 1900.13(b)(2); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); 22 C.F.R. § 171.17.

Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (finding that "disclosure, not secrecy, is the dominant objective of the Act," quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1992)).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

> **B.**     *The ACLU qualifies as a representative of the news media.*

A waiver of search and review fees is warranted because the ACLU qualifies as a "representative of the news media" and the SSCI Report is not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 32 C.F.R. § 1900.02(h)(3); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); 22 C.F.R. § 171.17. Accordingly, fees associated with the processing of this request should be "limited to reasonable standard charges for document duplication."

The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Nat'l Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *cf. Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is a "representative of the news media" for the same reasons that it is "primarily engaged in the dissemination of information." *See Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for FOIA purposes).[9] Indeed, the ACLU recently was held

---

[9] On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU. In June 2011, the National Security Division of the Department of Justice granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT

C05966589   UNCLASSIFIED   TO: 703 613 3007   P.10/11

to be a "representative of the news media." *Serv. Women's Action Network v. Dep't of Defense*, No. 3:11CV1534 (MRK), 2012 WL 3683399, at *3 (D. Conn. May 14, 2012). *See also Am. Civil Liberties Union of Wash. v. Dep't of Justice*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding ACLU of Washington to be a "representative of the news media"), *reconsidered in part on other grounds*, 2011 WL 1900140 (W.D. Wash. May 19, 2011).

* * *

Pursuant to applicable statute and regulations, we expect a determination regarding expedited processing within ten (10) calendar days. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 32 C.F.R. § 1900.21(d); 28 C.F.R. § 16.5(d)(4); 32 C.F.R. § 286.4(d)(3); 22 C.F.R. § 171.12(b).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

If the request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

Please furnish the applicable records to:

Mitra Ebadolahi
American Civil Liberties Union
125 Broad Street

Act. In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request submitted in December 2008. The Department of Justice granted a fee waiver to the ACLU with regard to the same FOIA request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in November of 2006. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The Department of Justice did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

9

18th Floor
New York, NY 10004

Thank you for your prompt attention to this matter.

I hereby certify that the foregoing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Mitra Ebadolahi
American Civil Liberties Union
Foundation
125 Broad Street
18th Floor
New York, NY 10004
Tel: 212.284.7305
Fax: 212.549.2654
Email: mebadolahi@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

10

Exhibit B

Central Intelligence Agency



Washington, D.C. 20505

22 February 2013

Ms. Mitra Ebadolahi
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY  10004

Reference:  F-2013-00829

Dear Ms. Ebadolahi:

This is a final response to your 13 February 2013 Freedom of Information Act
(FOIA) request, submitted on behalf of the American Civil Liberties Union Foundation.
Your request was received in the office of the Information and Privacy Coordinator on
14 February 2013, and sought "the disclosure of the recently adopted report of the Senate
Select Committee on Intelligence relating to the CIA's post-9/11 program of rendition,
detention, and interrogation (the 'Report')."

You have requested a Congressionally generated and controlled document that is
not subject to the FOIA's access provisions.  Therefore, the Agency cannot accept your
request.

Sincerely,

Michele Meeks
Information and Privacy Coordinator

Exhibit C

DIANNE FEINSTEIN, CALIFORNIA, CHAIRMAN
SAXBY CHAMBLISS, GEORGIA, VICE CHAIRMAN

JOHN D. ROCKEFELLER IV, WEST VIRGINIA     OLYMPIA J. SNOWE, MAINE
RON WYDEN, OREGON                          RICHARD BURR, NORTH CAROLINA
BARBARA A. MIKULSKI, MARYLAND              JAMES E. RISCH, IDAHO
BILL NELSON, FLORIDA                       DANIEL COATS, INDIANA
KENT CONRAD, NORTH DAKOTA                  ROY BLUNT, MISSOURI
MARK UDALL, COLORADO                       MARCO RUBIO, FLORIDA
MARK WARNER, VIRGINIA

HARRY REID, NEVADA, EX OFFICIO
MITCH McCONNELL, KENTUCKY, EX OFFICIO
CARL LEVIN, MICHIGAN, EX OFFICIO
JOHN McCAIN, ARIZONA, EX OFFICIO

DAVID GRANNIS, STAFF DIRECTOR
MARTHA SCOTT POINDEXTER, MINORITY STAFF DIRECTOR
KATHLEEN P. McGHEE, CHIEF CLERK

SSCI# 2012-4511



**United States Senate**

SELECT COMMITTEE ON INTELLIGENCE

WASHINGTON, DC 20510-6475

December 14, 2012

The President
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

Dear Mr. President:

I am pleased to inform you that the Senate Select Committee on Intelligence has completed its study of the CIA's former detention and interrogation program, and has produced a 6,000 page report, complete with an executive summary, findings, and conclusions. Yesterday, the Committee approved the report by a vote of 9-6. I will be providing a copy of the report for your review as it involves the implementation of a program conducted under the authority of the President.

This review is by far the most comprehensive intelligence oversight activity ever conducted by this Committee. We have built a factual record, based on more than six million pages of Intelligence Community records. Facts detailed in the report are footnoted extensively to CIA and other Intelligence Community documents. Editorial comments are kept to a minimum, clearly marked, and included to provide context. We have taken great care to report the facts as we have found them.

I am also sending copies of the report to appropriate Executive Branch agencies. I ask that the White House coordinate any response from these agencies, and present any suggested edits or comments to the Committee by February 15, 2012. After consideration of these views, I intend to present this report with any accepted changes again to the Committee to consider how to handle any public release of the report, in full or otherwise.

The report contradicts information previously disclosed about the CIA detention and interrogation program, and it raises a number of issues relating to how the CIA interacts with the White House, other parts of the Executive Branch,

and Congress.  Recognizing the many important issues before you, I urge you to review or get briefed on the report as soon as possible.  I will be pleased to make myself, and staff, available to discuss the report at your convenience.

Sincerely yours,

Dianne Feinstein
Chairman

cc:   Mr. Michael Morell, Acting Director, Central Intelligence Agency
      The Honorable James Clapper, Director of National Intelligence
      The Honorable Eric Holder, Attorney General
      The Honorable Leon Panetta, Secretary of Defense
      The Honorable Hillary Clinton, Secretary of State

Exhibit D

UNCLASSIFIED

Director of Office of
Congressional Affairs

From: Grannis, D (Intelligence) Subject:   SSCI report, reading
Date: 12/13/2012 05:18 PM     To:

Mark David Agrast

Cc:

Please respond to "Grannis, D
(Intelligence)"

[***** Document has been archived.  Click "Retrieve" button to retrieve document contents and
attachments. *****]

CLASSIFICATION: UNCLASSIFIED

The SSCI approved today its report on CIA Detention and Interrogation.
Per the motion adopted by the Committee, we will be transmitting to the White House, the ODNI, the CIA,
and the Department of Justice a limited number of hard copies of the report for review.
We will send an official transmittal letter tomorrow.
However, by explicit instruction of the Chairman, and as specified in the motion, we will only provide
copies of the report to specific individuals who are identified in advance to the Chairman (through me).

Regards,

David

David Grannis

Staff Director

Senate Select Committee on Intelligence

UNCLASSIFIED