## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:13-cv-01870 (JEB) |
| v. | ) ) | |
| CENTRAL INTELLIGENCE AGENCY, et al. | ) ) ) | |
| Defendants. | ) ) | |

## <u>GOVERNMENT'S MOTION TO DISMISS</u>

The government hereby moves to dismiss pursuant to Fed. R. Civ. P. 12(h)(3) or

12(b)(1). The reasons for this motion are set forth in the accompanying memorandum.

Dated: January 21, 2015

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

RONALD C. MACHEN, Jr.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

_/s/ Vesper Mei_
VESPER MEI (D.C. Bar 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch

20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-4686
Fax:  (202) 616-8470
E-mail: vesper.mei@usdoj.gov

**Counsel for the Defendant**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:13-cv-01870 (JEB) |
| v. | ) ) | |
| CENTRAL INTELLIGENCE AGENCY, et al. | ) ) ) | |
| Defendants. | ) ) | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### STATEMENT

In this case, brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiffs seek the release of the full 6,963 page Senate Select Committee on Intelligence ("SSCI") report concerning the CIA's former detention and interrogation program ("SSCI Report" or "Full Report").[1]  Unlike the report's Executive Summary and Findings and Conclusions ("Executive Summary")—which the SSCI voted to submit to the Executive Branch for declassification review in April 2014, and publicly released on December 9, 2014—the SSCI has not voted to either seek to declassify or to release the Full Report.  The Full Report therefore remains a congressional record subject to congressional control and is not an agency record within the meaning of FOIA.  *See United We Stand America, Inc. v. I.R.S.*, 359 F.3d 595, 597 (D.C. Cir. 2004).

---

[1] Plaintiffs seek the Full Report from four agency defendants:  the Central Intelligence Agency ("CIA"), the Department of Defense ("DoD"), the Department of Justice ("DOJ"), and the Department of State ("DOS").

Congress retains control over the Full Report for at least five reasons.  First, the conditions under which the report was created reflect that SSCI as a whole asserted complete control over not only drafts, but also the final product.  Second, throughout the years-long process of creating and finalizing the Report, both SSCI and the CIA handled the Report in accordance with SSCI's instructions and strict limitations on access.  Third, SSCI voted, in accordance with Senate Rules, to seek declassification and release only of the Executive Summary, Findings and Conclusions – not the Full Report.  The then-SSCI Chairman's decision to provide the Full Report to certain Executive Branch agencies for nonpublic use does not amount to a Committee decision to seek to declassify and release the Full Report.  Fourth, the current Chairman of SSCI has reiterated SSCI's intent to retain control of the Full Report. Finally, the defendant agencies have treated the Full Report, received in December 2014, as a congressional record, sequestering it in secure storage space appropriate to its classification and carefully limiting its dissemination and use.  Because the Full Report remains a congressional record as opposed to an agency record, this Court lacks jurisdiction over plaintiffs' FOIA claim seeking its release, and plaintiffs' claim should be dismissed under Rule 12(h)(3) or 12(b)(1).[2]

---

[2] Plaintiffs initially sought the CIA's Response to the SSCI Report.  It, along with the Executive Summary, findings, and conclusions of the SSCI Report (which plaintiffs did not separately seek), was released on December 9, 2014.  By email dated December 11, 2014, plaintiffs notified the government that they do not intend to seek any further relief with respect to either the CIA Response or the SSCI Report Executive Summary.  Plaintiffs also seek from the CIA in this case the release of what plaintiffs refer to as the "Panetta Report," *i.e.*, an alleged CIA report concerning its former detention and interrogation program, which Senator Mark Udall referred to on December 17, 2013, during the confirmation hearing for the CIA's General Counsel.  The CIA is separately moving for summary judgment on that claim.

## I.      PLAINTIFFS' FOIA REQUESTS.

By letter dated February 13, 2013, plaintiffs sent a FOIA request to the Central

Intelligence Agency, seeking "disclosure of the recently adopted report of the Senate Select

Committee on Intelligence relating to the CIA's post-9/11 program of rendition, detention, and

interrogation."  Declaration of Neal Higgins, Director, Office of Congressional Affairs, Central

Intelligence Agency ("Higgins Decl.") , ¶ 6; Exh. A to Decl.  By letter dated February 22, 2013,

the Agency advised plaintiffs that the requested Report was a "Congressionally generated and

controlled document that is not subject to the FOIA's access provisions" and, accordingly, the

CIA could not accept the request.  Higgins Decl.¶ 7; Exh. B to Decl.

Plaintiffs filed this lawsuit on November 26, 2013, and filed an amended complaint on

January 27, 2014.  On May 6, 2014, plaintiffs submitted identical new FOIA requests to the CIA,

the Department of Defense, the Department of Justice, and the Department of State, seeking "the

updated version of the Senate Select Committee on Intelligence's Report."  Higgins Decl. ¶ 9;

Exh. C to Decl.  *See also* Declaration of Julia E. Frifield, Assistant Secretary of the Bureau of

Legislative Affairs, U.S. Department of State ("Frifield Decl.") ¶ 5; Declaration of Mark H.

Herrington, Associate Deputy General Counsel, Office of Litigation Counsel, U.S. Department

of Defense ("Herrington Decl.") ¶  4; Declaration of Peter J. Kadzik, Assistant Attorney General,

Office of Legislative Affairs, U.S. Department of Justice ("Kadzik Decl.") ¶ 4.

On June 5, 2014, plaintiffs amended their complaint to seek the release of the "Updated

SSCI Report" from not only the CIA, but also the Departments of Defense, Justice, and State.

Second Amended Complaint, ¶¶ 44-52.  The defendants have interpreted this to refer to the most

current version of the Full Report – the version transmitted by the then-Chairman of SSCI to the

Executive Branch in December 2014.[3]  Higgins Decl ¶ 9; Frifield Decl. ¶ 7; Herrington Decl. ¶ 5; Kadzik Decl. ¶ 4.

## II      SSCI'S TREATMENT OF THE FULL REPORT.

### A.      SSCI's Review of CIA Information and Early Drafting of the SSCI Report.

The SSCI Report was authored by the then-Majority staff of the Senate Select Committee on Intelligence, and concerns the CIA's former detention and interrogation program.  Higgins Decl. ¶ 10.  The Report was drafted after extensive discussions with the CIA to reach an accommodation that respected both the President's constitutional authority to protect classified information, and Congress's constitutional authority to conduct oversight of the Executive. Higgins Decl. ¶ 11.  Thus, SSCI and the CIA sought to protect from public disclosure both the highly sensitive and compartmented classified information at issue in the Report, information that necessarily came from the CIA, as well as the autonomy and control that SSCI maintained over the drafting, finalization, and dissemination of the Report itself.  *Id.* ¶¶ 11-14.  In order to best protect the highly sensitive and compartmented nature of the information at issue, the CIA established a secure electronic reading room on CIA premises, and created a segregated network shared drive, where designated SSCI personnel could review the highly classified materials and confidentially prepare and store their work product, including initial draft versions of the SSCI Report, in a secure environment.  *Id.* ¶ 11.

From the outset of this process, SSCI insisted that any records created by SSCI personnel on the segregated shared drive would not become "agency records" even though the material was created and stored on a CIA computer system.  *Id.* ¶ 12.  Specifically, in a June 2, 2009 letter

---

[3] In a status conference held on October 7, 2014, the parties agreed that the ACLU would not have to submit a new FOIA request or amend their complaint in order to seek to obtain the Full Report.  Transcript of Status Conference (Exhibit 1) at 8.

from the SSCI Chairman and Vice Chairman to the CIA Director, the Committee expressly stated that any records it produced, including "draft and final recommendations, reports, or other materials generated by Committee staff or Members, are the property of the Committee" and "remain congressional records in their entirety." *Id.*; Higgins Decl. Exh. D. SSCI further provided that "disposition and control over these records, even after the completion of the Committee's review, lies exclusively with the Committee." *Id.* As such, the Committee explicitly stated that "these records are not CIA records under the Freedom of Information Act or any other law" and that "[t]he CIA may not integrate these records into its records filing systems, and may not disseminate or copy them, or use them for any purpose without prior written authorization from the Committee." *Id.* The SSCI also stated that in response to a FOIA request seeking these records, the CIA should "respond to the request or demand based upon the understanding that these documents are congressional, not CIA, records." *Id.*

After reaching these accommodations, SSCI personnel used the segregated shared drive to draft the initial versions of its Report. *Id.* ¶ 13. Thereafter, and throughout the drafting process with the assistance of CIA information technology and security personnel, portions of the draft report were transferred from the segregated shared drive to secure SSCI facilities at the U.S. Capitol complex so that the Committee could complete the drafting process in its own workspaces. *Id.* Consequently, it is the CIA's understanding that the version of the Full Report that was ultimately adopted by the Committee and subsequently provided to the Agency does not reside on the shared drive. *Id.* ¶ 14. Nonetheless, the restrictions governing the information on the shared drive have informed how the CIA has treated SSCI's work product provided to the CIA. *Id.*

**B.      Approval and Transmission of the Initial Draft.**

On December 13, 2012, SSCI decided in closed session to "approve" drafts of the

Executive Summary and Full Report, and to transmit those drafts to the Executive Branch for

review.  *See* SSCI, Committee Study of the CIA's Detention and Interrogation Program:

Executive Summary, at 8 (Dec. 3, 2014); available at

http://www.intelligence.senate.gov/study2014/executive-summary.pdf; *see also* 158 Cong. Rec.

D1029 (daily ed. Dec. 12, 2012) (SSCI's December 13, 2012, meeting was a "closed business

meeting").  An e-mail from the SSCI Staff Director to the defendant agencies made it clear that

the motion approved by the Committee imposed various limitations on the agencies' use of the

Executive Summary and Full Report.  Among other things, the Committee's motion limited

dissemination of the drafts to specific individuals at specific agencies, who would be identified

in advance to the SSCI Chairman.  Higgins Decl. Exh. E.  The Committee approved granting

access to those individuals for the limited purpose of providing edits and comments in response

to the 2012 draft Report.  *Id.*

**C.      SSCI's April 2014 Decision to Send the Executive Summary to the President
         for Declassification.**

SSCI revised the Executive Summary and Full Report after considering the CIA's

comments.  SSCI, Executive Summary, at 9.  SSCI then met in closed session on April 3, 2014,

to determine the proper disposition of those revised documents.  *Id.*; *see also* 160 Cong. Rec.

D359 (daily ed. Apr. 2, 2014) (SSCI's April 3, 2014, meeting was for the purpose of holding

"closed hearings to examine certain intelligence matters").  The Committee ultimately decided to

approve the revised versions and to send the Executive Summary to the President to seek

declassification and eventual public release.  *Id.*  SSCI, Executive Summary, at 9; Higgins Decl.

¶ 17.  Although the exact text of the motion approved by the Committee is not publicly available, it is clear from the public statements of SSCI members that the Committee did not approve seeking declassification, and subsequent release, of the Full Report.  *See, e.g.*, Sen. Dianne Feinstein, Press Release, Intelligence Committee Votes to Declassify Portions of CIA Study (Apr. 3, 2014) ("The full 6,200-page full report has been updated and will be held for declassification at a later time."); Higgins Decl. ¶ 18; Higgins Decl. Exh. F.

>   **D.    SSCI's December 2014 Public Release of the Executive Summary.**

SSCI and the Executive Branch had many discussions after April 2014 regarding the Executive Summary, and SSCI continued to edit the document in light of those discussions. Higgins Decl. ¶ 19.  SSCI also apparently made conforming changes to the Full Report as it updated the Executive Summary.  *Id.*  When SSCI and the Executive Branch concluded their discussions, the Director of National Intelligence declassified a partially redacted version of the Executive Summary.  SSCI then publicly released the redacted Executive Summary, along with minority views and the additional views of various Committee members, redacted in the same manner, on December 9, 2014.  Higgins Decl. ¶ 20.  At that time, the SSCI did not choose to seek declassification of or publicly release the Full Report.  SSCI Committee Study of the CIA's Detention and Interrogation Program: Chairman's Foreword, at 3 (Dec. 3, 2014) ("I chose not to seek declassification of the full Committee Study at this time.")

## III.    ADDITIONAL CORRESPONDENCE FROM SSCI CHAIRMEN.

The events described above constitute SSCI's formal course of action with respect to the disposition of the Executive Summary and Full Report.  The former Chairman and the current Chairman have also expressed additional views in letters to the President.  In addition, the former

Chairman has transmitted at least two updated versions of the Full Report to the President—one

in the summer of 2014 and another in December 2014.  Higgins Decl. ¶ 21.  The CIA received

both updated versions of the Full Report; the other defendant agencies in this case received only

the December 2014 version.  Frifield Decl ¶ 7; Herrington Decl. ¶ 5; Kadzik Decl. ¶ 5.

      In letters to the President dated April 7, 2014, and December 10, 2014, SSCI Chairman

Dianne Feinstein expressed her desire for the Full Report to be made available to appropriate

Executive Branch agencies.  Her April 7 letter enclosed the Findings and Conclusions of the

Executive Summary, which SSCI had voted to send for declassification, and stated that she

would transmit separately copies of the Full Report, for which she "encourage[d] and approve[d]

the dissemination . . . to all relevant Executive Branch agencies, especially those who were

provided with access to the previous version."  She added:  "This is the most comprehensive

accounting of the CIA's Detention and Interrogation Program, and I believe it should be viewed

within the U.S. Government as the authoritative report on the CIA's actions."  Exhibit 2 (April 7,

2014 letter from SSCI Chairman Dianne Feinstein to The Honorable Barack Obama).

      In December 2014, SSCI Chairman Dianne Feinstein transmitted an updated, presumably

final, version of the Full Report to the defendant agencies.  Her December 10, 2014, cover letter

to the President expressed a desire for the Full Report to be "made available within the CIA and

other components of the Executive Branch for use as broadly as appropriate to help make sure

that this experience is never repeated."  The letter continued: "To help achieve that result, I hope

you will encourage use of the full report in the future development of CIA training programs, as

well as future guidelines and procedures for all Executive Branch employees, as you see fit."

Exhibit 3 (December 10, 2014 letter from SSCI Chairman Dianne Feinstein to The Honorable Barack Obama).

The Committee chairmanship passed from one party to the other when the current Congress opened on January 3, 2015.  The new Chairman, Senator Richard Burr, recently sent a letter to the President indicating that he was not aware of the former Chairman's December 2014 letter transmitting the Full Report to the President before or at the time it was sent.  He advised the President that he considers the Full Report to be "a highly classified and committee sensitive document" and was therefore requesting that "all copies of the full and final report in the possession of the Executive Branch be returned immediately to the Committee."  The Chairman added: "If an Executive Branch agency would like to review the full and final report, please have them contact the Committee and we will attempt to arrive at a satisfactory accommodation for such a request."  Exhibit 4 (January 14, 2015 letter from SSCI Chairman Richard Burr to The Honorable Barack Obama).

On January 16, 2015, now-SSCI Vice Chairman Feinstein responded to Chairman Burr's January 14, 2015, letter.  In that letter, the Vice Chairman stated that she "did not support" the request that the Executive Branch return all copies of the Full Report to the Committee.  She further reiterated the request from her December 10, 2014, letter, "and ask[ed] that you retain the full 6,963-page classified report within appropriate Executive branch systems of record, with access to appropriately cleared individuals with a need to know."  Exhibit 5 (January 16, 2015 letter from SSCI Vice Chairman Dianne Feinstein to The Honorable Barack Obama).

## ARGUMENT

I.     **THE SSCI REPORT IS A CONGRESSIONAL RECORD, NOT SUBJECT TO FOIA.**

      A.     **Whether the Document is an "Agency Record" Presents a Jurisdictional Question.**

Under FOIA, an agency need only disclose "agency records."  5 U.S.C. § 552(a)(4)(B).

A court has jurisdiction to "enjoin the agency from withholding agency records and to order the

production of any agency records improperly withheld from the complainant."  5 U.S.C. §

552(a)(4)(B).  The question of whether a document is an "agency record" is, therefore,

jurisdictional.  *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136-38,

150 (1980) (federal jurisdiction in a FOIA case is dependent upon a showing that an agency has

(1) "improperly," (2) "withheld," (3) "agency records").  The SSCI Report at issue in this case is

not an "agency record," but a congressional document.  Because FOIA does not cover

congressional documents or records, this Court lacks subject matter jurisdiction over plaintiffs'

FOIA claims relating to the SSCI Report, and they should be dismissed.  *See Bureau of Nat.*

*Affairs, Inc. v. U.S. Dept. of Justice*, 742 F.2d 1484, 1488 (D.C. Cir. 1984) ("The requirement

that materials sought by a private party be "agency records" is jurisdictional—only when an

agency withholds an agency record does the district court have authority to compel disclosure.").

Because subject matter jurisdiction focuses on a court's power to hear the plaintiffs'

claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is

acting within the scope of its jurisdictional authority.  *Grand Lodge of the Fraternal Order of*

*Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).   In deciding a Rule 12(b)(1) motion, a

Court need not limit itself to the allegations of the Complaint.  *See Hohri v. United States*, 782

-10-

F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  Rather, it may

"consider such materials outside the pleadings as it deems appropriate to resolve the question

whether it has jurisdiction in the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp.

2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197

(D.C.Cir.1992)).[4]

> **B.    An Analysis of the Relevant Factors Demonstrates that Congress Retains Control of the SSCI Report.**

In *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989), the Supreme Court

concluded that two requirements must be met in order for materials to qualify as "agency

records."  First, the agency must have either created or obtained the requested materials.  *Id.*

Second, "the agency must be in control of the requested materials at the time the FOIA request is

made." *Id.* at 145.  While none of the defendant agencies created the SSCI Report, they do not

_____

[4] Courts in this Circuit have considered motions to dismiss for lack of subject matter jurisdiction to be brought under Rule 12(b)(1) even after the filing of a responsive pleading.  *See, e.g., U.S. v. Philip Morris USA, Inc.*, 787 F.Supp.2d 68, 73 (D.D.C. 2011) (treating challenge to court's subject matter jurisdiction in "Suggestion of Mootness and Motion for Partial Vacatur" of award of injunctive relief brought under Rule 12(h)(3) as challenge to subject matter jurisdiction under Rule 12(b)(1), stating that challenge to subject matter jurisdiction under Rule 12(b)(1) "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006)).  To the extent the Court may determine that this motion should have been brought either under Rule 12(h)(3) or 12(c), rather than Rule 12(b)(1) because defendant has already filed an answer to plaintiff's complaint, Rule 12(b)(1) continues to provide the proper standard of review.  *See id.* ("When faced with what a party characterizes as a Rule 12(h)(3) motion, a court should treat the motion as a traditional Rule 12(b)(1) motion for lack of subject matter jurisdiction.") (quoting *Harbury v. Hayden*, 444 F.Supp.2d 19, 26 (D.D.C.2006)).  A Rule 12(c) motion to dismiss for lack of subject matter jurisdiction should also be decided under the 12(b)(1) standard.  *See Newbrough v. Piedmont Reg'l Jail Auth.*, No. 3:10CV867–HEH, 2012 WL 169988, at *2 (E.D. Va. 19 Jan. 19, 2012) (quoting 5A Wright & A. Miller, Fed. Practice and Procedure § 1367 (1990)) ("'[I]f a party raises an issue of subject matter jurisdiction on his motion for judgment on the pleadings, the court will treat the motion as if it had been brought under Rule l2(b)(1).'").

dispute that it was delivered to them in December 2014.  Because the SSCI Report is not under

any of the agencies' control, however, it is not an agency record.

The D.C. Circuit generally analyzes four factors to determine whether an agency

exercises sufficient control over requested documents to render them agency records:

> (1) the intent of the document's creator to retain or relinquish control over the records;
> (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to
> which agency personnel have read or relied upon the document; and (4) the degree to
> which the document was integrated into the agency's record system or files.

*United We Stand America, Inc.*, 359 F.3d at 599 (citing *Burka v. U.S. Dep't of Health & Human

Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (other citations omitted).

Because this case concerns documents obtained by the agencies from Congress, however,

the four-part test does not apply.  *See Judicial Watch, Inc. v. U.S. Secret Service*, 726 F.3d 208,

221 (D.C. Cir. 2013) ("the standard, four-factor control test does not apply to documents that an

agency has . . . obtained from . . . a governmental entity not covered by FOIA: the United States

Congress.").  Rather, in such a case, "the first two factors of the standard test [are] effectively

dispositive."  *Id.*  This is because "special policy considerations . . . counsel in favor of according

due deference to Congress' affirmatively expressed intent to control its own documents."  *Id.*

(quoting *Paisley v. CIA*, 712 F.2d 686, 693 n. 30 (D.C. Cir. 1983) (*vacated in part on other

grounds*, 724 F.2d 201 (D.C. Cir. 1984)).  These "special policy considerations" include:  "(1)

Congress' clear intent to exempt congressional documents from disclosure under FOIA; (2)

Congress' clear prerogative to prevent disclosure of its own confidential materials; and (3) the

danger of inhibiting the legislative . . . branch[] from making [its] records available to the

executive branch."  *Goland v. CIA*, 607 F.2d 339, 348 n. 48 (D.C. Cir. 1979).

Four decisions of the D.C. Circuit illustrate application of these principles.  In *Goland*, a FOIA requester sought a copy of a congressional hearing transcript in the possession of the CIA. *Goland*, 607 F.2d at 345.  In holding that the transcript was not an agency record, the D.C. Circuit considered that the Committee had met in executive session, the stenographer and typist were sworn to secrecy, the transcript was marked "Secret," and the CIA retained a copy of the transcript for internal reference purposes only, for use in conjunction with legislation concerning the CIA and its operations.  *Id.* at 347.

In contrast, the D.C. Circuit has found that formerly congressional documents in the hands of agencies could be converted to agency records, but "only because Congress had not clearly expressed an intent to retain control over them."  *Judicial Watch*, 726 F.3d at 221 (citing *Paisley,* 712 F.2d at 696).  Thus, in *Paisley*, the plaintiff sought two transcripts of testimony given before SSCI, and three letters from the SSCI chairman, two to a senator, and one to the Attorney General.  *Paisley*, 712 F.2d at 694 n. 32.  Because there were no special conditions of secrecy surrounding the congressional hearings for which transcripts of testimony were sought, and because the documents were not subsequently sent to the defendant agencies in such a way as to manifest intent by Congress to retain control, the *Paisley* court held that the documents at issue were not, in fact, congressional records.  *Id.* at 694-95.  Similarly, in *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 840 (D.C. Cir. 1980), the court found that, "even if once excluded from the FOIA as congressional records," documents that were generated by Congress and sent to the CIA had become agency records "because Congress failed to express with sufficient clarity its intent to retain control over the documents."  The *Holy Spirit* court did not, however, "direct Congress to act in a particular way in order to preserve its FOIA

exemption for transferred documents," and "[did] not adopt appellant's position that Congress

must give contemporaneous instructions when forwarding congressional records to an agency."

*Id.* Rather, what was required was "some clear assertion of congressional control." *Id.* Because

"nothing here either in the circumstances of the documents' creation or in the conditions under

which they were sent to the CIA indicate[d] Congress' intent to retain control over the records or

to preserve their secrecy," the court concluded that the documents were agency records. *Id.* at

842.

   Finally, in *United We Stand America*, the D.C. Circuit found that a letter sent to the IRS

by a congressional committee was not an "agency record" because the document itself stated:

"This document is a Congressional record and is entrusted to the Internal Revenue Service for

your use only.  This document may not be disclosed without the prior approval of the Joint

Committee." *United We Stand America*, 359 F.3d at 600–01. The court ultimately found that the

agency's response to the letter was an agency record, although portions were redacted so as not

to disclose the nature of Congress' request, in an effort to protect the contents of that

congressional record. *Id.* at 602–03.

   In *Holy Spirit* and *United We Stand America*, the courts echoed the *Paisley* court's

analysis.  In *Paisley*, the court had stated that, "[w]hether a congressionally generated document

has become an agency record . . . depends on whether under all the facts of the case the

document has passed from the control of Congress and become property subject to the free

disposition of the agency with which the document resides." *Paisley*, 712 F.2d at 692.  To that

end, the *Paisley* court held:  "Two factors are considered dispositive of Congress' continuing

intent to control a document:  (1) the circumstances attending the document's creation, and (2)

the conditions under which it was transferred to the agency." *Id.* Indeed, these factors are the flip side of the second factor in the test set forth in *United We Stand America:* "if 'Congress has manifested its own intent to retain control, then the agency – by definition – cannot lawfully 'control' the documents." *United We Stand America*, 359 F.3d at 600 (quoting *Paisley*, 712 F.2d at 693).

In this case, which concerns a document created by Congress and delivered to certain Executive Branch agencies, both the circumstances attending the creation of the SSCI Report and the conditions under which it was transferred to the agencies support the conclusion that the Full Report remains under congressional control. These conditions also limit the ability of the agencies to use and dispose of the Full Report as they see fit. Accordingly, the first two factors of the four-factor test for agency control squarely support the conclusion that the Full Report remains a congressional record. Although the final two factors of the four-factor test (the extent to which agency personnel have read or relied upon the document, and the degree to which the document was integrated into the agency's record system or files) are not relevant to congressionally-generated documents, those factors also support a finding that the Full Report is not an agency record.

**1.      SSCI Intended to Retain Control Over the Full Report.**

        **a.      The circumstances surrounding the creation of the Report show that Congress intended to retain control.**

The circumstances surrounding the creation of the SSCI Report show that Congress intended to retain control over the Full Report. *Judicial Watch*, 726 F.3d at 221; *Paisley*, 712 F.2d at 692. Even before the drafting of the Full Report began, SSCI expressly stated that it intended for its records, including "any . . . draft and final recommendations, reports or other

materials generated by Committee staff or Members," to remain congressional records not subject to FOIA.  Higgins Decl. ¶ 12, Exh. D to Decl.  The CIA was directed not to integrate the records from the segregated drive into its records filing system, or to disseminate, copy, or use them for any purpose without prior authorization from the Committee.  *Id*.  And SSCI requested that in response to a FOIA request seeking these records, the CIA should respond based on an understanding that the documents are congressional, not CIA, records.  *Id.*  These admonitions are analogous to the Joint Committee on Taxation's confidentiality request in *United We Stand America*, which the D.C. Circuit found to be a sufficient indication of congressional intent to retain control over a letter requesting documents from the IRS.  *See* 359 F.3d at 600-01, 605 (letter stated:  "This document is a Congressional record and is entrusted to the Internal Revenue Service for your use only. This document may not be disclosed without the prior approval of the Joint Committee.").  Further, this direction regarding the handling of the these records came from both the Chairman and Vice Chairman of SSCI, reflecting an indisputable consensus with respect to how the committee viewed not only drafts of the report, but also the final Full Report.

Additional facts similarly support the conclusion that Congress intended to maintain control over the Full Report.  SSCI's discussions and votes regarding the Full Report were all in closed session.  *See, e.g*., 160 Cong. Rec. D359 (daily ed. Apr. 2, 2014); 158 Cong. Rec. D1029 (daily ed. Dec. 12, 2012).  All versions of the Full Report are marked TOP SECRET, with additional access restrictions noted based on the sensitive compartmented information contained in it.  Higgins Decl. ¶ 22.  As such, the Full Report could not have been widely disseminated.  Indeed, the very subject-matter of the Full Report – intelligence operations, foreign relations, and other classified matters – suggests that it could not be broadly disseminated.  *Id.*  Thus, the Full

Report "was quite obviously meant to be secret," *Holy Spirit v. CIA*, 636 F.2d 838, 841 (D.C.

Cir. 1981), and the circumstances surrounding the Report's creation closely mirror those of the

transcript in *Goland* that was found not to be an agency record.  *See Goland,*607 F.2d at 347

(congressional committee met in executive session to conduct the hearing; stenographer and

typist were sworn to secrecy; and the transcript was marked 'Secret;' additionally, record was

known to contain "discussions of basic elements of intelligence methodology, both of this

country and of friendly foreign governments, as well as detailed discussions of the CIA's

structure and disposition of functions.").

Indeed, the applicable Senate rules also confirm that the Full Report is confidential, as the

default rule for SSCI information is that it may not be publicly disclosed.  *See, e.g.,* S. Res. 94-

400, § 8(a) ("No member of the Select Committee shall disclose any information, the disclosure

of which requires a committee vote, prior to a vote by the committee on the question of the

disclosure of such information or after such vote except in accordance with this section.")

available at http://www.intelligence.senate.gov/pdfs113th/sprt1137.pdf; SSCI Rule 9.7 ("No

member of the Committee or of the Committee staff shall disclose, in whole or in part or by way

of summary, the contents of any classified or committee sensitive papers, materials, briefings,

testimony, or other information in the possession of the Committee to any other person, except as

specified in this rule. . . .  Public disclosure of classified information in the possession of the

Committee may only be authorized in accordance with Section 8 of S. Res. 400 of the 94th

Congress.") available at http://www.intelligence.senate.gov/pdfs113th/sprt1137.pdf; Senate Rule

29.5 (providing that disclosure of "secret or confidential business or proceedings of the Senate"

can lead to expulsion from the Senate (for a Senator), or dismissal from the service of the Senate, and punishment for contempt (for an officer or employee of the Senate)).

Perhaps most importantly, SSCI has voted to seek declassification review only of the Executive Summary, and to publicly release only the Executive Summary, rather than the Full Report, further evidencing the control that SSCI still retains over the Full Report.  On April 3, 2014, when SSCI met to determine the proper disposition of the Executive Summary and Full Report, the Committee voted to approve the updated versions of both, but only to send the Executive Summary to the President to seek declassification for eventual public release.  The Committee did not vote to seek declassification or for release of the Full Report.  *See supra* at II.C.  As in previous cases, Congress's disparate treatment of these two similar documents strongly indicates that the Committee did not intend to broadly disseminate the Full Report either inside or outside the Government.  *See, e.g., Paisley*, 712 F.2d at 694 (noting the lack of external indicia of control over documents, where "SSCI knew quite well how to classify its documents as secret," was evidence of lack of congressional intent to maintain control); *Holy Spirit*, 636 F.2d at 842 (contrasting transfer of records from Congress with specific instructions, with documents that were forwarded without any such instructions).  And the fact that the Committee still has not voted to submit the Full Report for declassification review indicates that the Committee as a whole continues not to intend to relinquish control over the Full Report.

**b.**     **The conditions of transfer indicate Congress's intent to control.**

The instructions from SSCI at the time that the Full Report was delivered to the defendant agencies also provide strong evidence of the Committee's intent to retain full control over the distribution, dissemination, and ultimate disposition of the Report.

When SSCI first provided the approved draft Report to the agencies on December 14, 2012, it was for the specific and limited purpose of soliciting edits and comments for SSCI to consider in making changes to the Report before finalizing it.  That SSCI intended to review the comments provided and use them to perhaps amend the Report makes it clear that, while SSCI wanted the Executive Branch's input, it did not intend to relinquish control over drafts of the Report or the final work product that would emerge after review and comment by the agencies.

SSCI also asserted control over who was allowed to review the Report within the agencies.  The SSCI Staff Director detailed the explicit instructions of the Chairman that, as specified in a motion adopted by the Committee, SSCI would only provide copies of its Report to specific individuals identified in advance.  *See* Higgins Decl. ¶ 15, Exh. E to Decl. (Email from Staff Director Grannis to CIA (Dec. 13, 2012) (stating, "by explicit instruction of the Chairman, and as specified in the motion, we will only provide copies of the report to specific individuals who are identified in advance to the Chairman (through me)").  These measures indicate a continued congressional intent to maintain control over the Full Report.

The December 10, 2014 letter sent to the President by Senator Feinstein is not evidence of a contrary intent.  In December 2014, then-SSCI Chairman Feinstein transmitted to the President an updated version of the Full Report – this one presumably final.  Her cover letter expressed a desire for the Full Report to be "made available within the CIA and other components of the Executive Branch for use as broadly as appropriate to help make sure that this experience is never repeated."  Exh. 3.  The letter continued: "To help achieve that result, I hope you will encourage use of the full report in the future development of CIA training programs, as well as future guidelines and procedures for all Executive Branch employees, as you see fit."  *Id.*

Although the then-Chairman encouraged the President to disseminate the Full Report to appropriate individuals within the Executive Branch, the letter does not indicate an intent to more broadly disseminate the Full Report, or to send the Full Report to the Executive Branch for a formal declassification review.  Her letter could not have been intended to accomplish either of those things, because the SSCI had expressly declined to send the Full Report for a declassification review and declined to make the Full Report public.  Senator Feinstein's actions should be interpreted consistent with SSCI's earlier decision.  The Senator's letter is appropriately viewed as expressing continued congressional control by suggesting limited uses for the Full Report.  Specifically, Senator Feinstein indicated that the Full Report should be used only within the Executive Branch "to help make sure that this experience is never repeated."[5] This reservation of control, in conjunction with the SSCI's determination not to declassify and release the Full Report, reinforces congressional intent not to relinquish control over the document.  The letter encourages dissemination of the Full Report to individuals within the Executive Branch; it does not authorize the President to publicly release the Full Report or use and dispose of the Full Report in whatever way he sees fit.  *See Judicial Watch*, 726 F.3d at 223. At most, the defendant agencies have obtained copies of the Full Report "solely for internal reference purposes," just like the transcript in *Goland*.  607 F.2d at 347; *see also Tax Analysts v. U.S. Dep't of Justice*, 845 F.2d at 1069 & n.20 (noting that "public reference documents that may be found in agency libraries or offices, such as treatises, dictionaries and weekly news magazines," often will not be considered agency records), *aff'd*, 492 U.S. 136 (1989).

_____

[5] This view is further reinforced by the highly classified nature of Full Report.  Due to its classification, the Full Report cannot be widely circulated or even viewed by most Executive Branch employees.

Moreover, only the committee can seek to declassify the Full Report.  *See, e.g.,* S. Res. 94-400, § 8(a) ("The Select Committee may, subject to the provisions of this section, disclose publicly any information in the possession of such committee after a determination *by such committee* that the public interest would be served by such disclosure.") (emphasis added) available at http://www.intelligence.senate.gov/pdfs113th/sprt1137.pdf;  SSCI Rule 4.1 ("No measures or recommendations shall be reported, favorably or unfavorably, from the Committee unless a majority of the Committee is actually present and a majority concur.") available at http://www.intelligence.senate.gov/pdfs113th/sprt1137.pdf.  There is no dispute between the current and former Chairs that the committee has not sought declassification of the Full Report in this case.

The recent letters from the new SSCI Chairman and the former SSCI Chairman (now Vice Chairman) highlight the lack of any institutional intent to relinquish control of the Full Report.  While former Chairman Feinstein's December 10, 2014, letter "encourage[s]" the dissemination of the Full Report within the Executive Branch, it does not approve public dissemination of the report.  Likewise, the current SSCI Chairman has unambiguously expressed an intention to retain congressional control over the final report, and has indicated that he considers the report to be a 'committee sensitive" document.  *See* Exh. 4 ("I consider [the Full] report to be a highly classified and committee sensitive document.  It should not be entered into any Executive Branch system of records.  For that reason, I request that all copies of the full and final report in the possession of the Executive Branch be returned immediately to the Committee.").  Although both Senators agree that the Full Report is not to be made public, their conflicting views on a politically sensitive issue underscore the importance of looking to the

Committee's official actions as evidence of congressional intent.  And the Committee's official actions, as forcefully articulated in its 2009 correspondence, make it clear that it has not relinquished control over the Full Report.  Exh. D to Higgins Decl.

> **2.    The defendant agencies cannot use or dispose of the record as they see fit.**

Because under the facts of this case, SSCI amply manifested its intent to retain control over the Full Report, it necessarily follows that the agencies cannot use or dispose of the Full Report as they see fit.  As the D.C. Circuit has explained, "[i]f, under the *Goland* standard, Congress has manifested its own intent to retain control, then the agency – by definition – cannot lawfully 'control' the documents."  *United We Stand*, 359 F.3d at 600, 603.  Here, the first two factors in the standard four-factor test – Congress's intent to control and the agency's ability to control – thus "fit together" in this case and confirm the decisive point: the agencies do not have "exclusive control of the disputed documents."  *Id.* at 600.

> **3.    The final two factors also favor a finding that the Full Report is not an agency record.**

Although the D.C. Circuit instructs against applying the final two factors of the standard test in a case involving a congressionally-created document, these final two factors – the extent to which agency personnel have read or relied upon the document, and the degree to which the document was integrated into the agency's record system or files – also weigh in favor of a finding that the SSCI Report is not an agency document.  As set forth in the Higgins, Frifield, Herrington and Kadzik declarations, none of the defendant agencies have freely used the Full Report; they have kept it stored in a SCIF, with limited access.  Neither DOJ nor DOS, moreover, has even opened the package with the disc containing the full Report.  And CIA and DoD have carefully limited access to and made only very limited use of the Report.  Each agency

has ensured that the envelope containing the disc is marked with the appropriate classification markings, stored in a secure location consistent with the disc's classification, and labeled as a "congressional record."  Higgins Decl. ¶¶ 22-24; Frifield Decl. ¶¶ 8-9; Herrington Decl. ¶¶ 6-7; Kadzik Decl., ¶¶ 6-9.

Moreover, the current SSCI Chairman has stated that, not only are the agencies not to use the full Report without the specific permission of the Committee, but they should return the discs that were delivered on December 20, 2014.  Exh. 4.  Indeed, because the Full Report remains highly classified and compartmented, it cannot be widely disseminated or used within the Executive Branch.  The limited use of the Full Report by individuals within the agencies weighs against a finding that the Full Report is an agency record.  *See, e.g., Judicial Watch, Inc. v. United States Secret Service*, 726 F.3d 208, 218-19 (D.C. Cir. 2013) (concluding that Secret Service did not have ability to use records "as it sees fit" when the Service could use records for only two limited purposes: "to perform background checks to determine whether and under what conditions to authorize a visitor's temporary admittance to the White House Complex," and "to verify the visitor's admissibility at the time of the visit").

Thus, the circumstances under which SSCI prepared the Full Report and provided it to the defendant agencies demonstrate a clear intent to retain control over access to, and dissemination of, the SSCI Report, precluding the agencies' ability to use the document as they see fit.  In consideration of this congressional intent, the defendant agencies have restricted their employees' use of and access to the Full Report, and the document has not been widely disseminated or relied upon in the course of agency business.

### C.      Policy Considerations Unique to the Congressional Context Require a Determination that the SSCI Report is not an "Agency Record."

In *United We Stand America, Inc.*, the D.C. Circuit recognized "policy considerations unique to the congressional context" that inform where to draw the line between congressional documents and agency records.  *United We Stand,* 359 F.3d at 599.  As noted above, these special "policy considerations" include:  "(1) Congress' clear intent to exempt congressional documents from disclosure under FOIA; (2) Congress' clear prerogative to prevent disclosure of its own confidential materials; and (3) the danger of inhibiting the legislative . . . branch[] from making [its] records available to the executive branch."  *Goland*, 607 F.2d at 348 n. 48.  Along the same lines, in *Judicial Watch*, 726 F.3d at 224, the D.C. Circuit concluded that constitutional separation of powers concerns provided an important reason to find that the logs of visitors to the Office of the President were not "agency records" within the meaning of FOIA.  In finding that the visitor logs were not "agency records," the *Judicial Watch* court – in language equally applicable here – cautioned against allowing a plaintiff to use FOIA to require the disclosure of documents otherwise not subject to FOIA:  "And where Congress has intentionally excluded a governmental entity from the Act, we have been unwilling to conclude that documents or information of that entity can be obtained indirectly, by filing a FOIA request with an entity that *is* covered under that statute."  *Id.* at 225 (emphasis in original).

In this case, plaintiffs are seeking to use FOIA to circumvent the political process by which SSCI made the determination to seek to declassify and publicly release the SSCI Report's Executive Summary, but not the Full Report.  To effect that circumvention, plaintiffs invite this Court to ignore the limits of its subject-matter jurisdiction and wade into a Committee debate that, based upon the letters most recently sent by the Committee Chairman and Vice Chairman,

appears to be ongoing.  The result of a finding that the Full Report is an "agency record" in this case would be a declassification review and release of non-exempt portions of the Full Report, a result entirely at odds with the SSCI's decision not to send the report for a declassification review, and contrary to the direction of the current SSCI Chairman.  Such a result would allow the plaintiffs indirectly to obtain a document that would otherwise not be subject to FOIA, as well as to circumvent both the exemption of congressional documents from disclosure, and Congress's clear prerogative to prevent disclosure of its own confidential materials.  Because such a result is plainly unwarranted, the Court should conclude that the Full Report is not an agency record and dismiss this count of plaintiffs' complaint.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should dismiss plaintiffs' FOIA claim for release of the Full Report.

Dated: January 21, 2015

<div style="margin-left:40%">

Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

RONALD C. MACHEN, Jr.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

 */s/ Vesper Mei*
VESPER MEI (D.C. Bar 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530

</div>

Telephone:  (202) 514-4686
Fax:  (202) 616-8470
E-mail: vesper.mei@usdoj.gov

***Counsel for the Defendant***