**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ACLU and ACLU Foundation,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, et al.,<br><br>Defendants. | ) | Civil Action No. 13-1870 (JEB) |

**DECLARATION OF NEAL HIGGINS**
**DIRECTOR, OFFICE OF CONGRESSIONAL AFFAIRS**
**CENTRAL INTELLIGENCE AGENCY**

I, NEAL HIGGINS, hereby declare and state:

1. I am the Director of the Office of Congressional Affairs at the Central Intelligence Agency ("CIA" or "Agency"). I joined the CIA in June 2013 after working for the Senate Select Committee on Intelligence ("SSCI" or "Committee"), where I served as a senior advisor to Senators Bill Nelson and Martin Heinrich, regional monitor for the Persian Gulf, and budget monitor for the Federal Bureau of Investigation. Prior to joining the SSCI staff, I served as Senator Nelson's legislative director. Earlier in my career I worked as a member of the trial team prosecuting Slobodan Milosevic and as an associate attorney at the law firm of Sullivan & Cromwell LLP.

2. As Director of the Office of Congressional Affairs, I am the principal advisor to the Director of the CIA on all matters concerning relations with the Congress. My responsibilities include ensuring that the Congress is kept fully and currently informed of the Agency's intelligence activities via timely briefings and notifications, responding in a timely and complete fashion to congressional taskings and inquiries, tracking and advising on legislation that could affect the Agency, and educating CIA personnel about their responsibility to keep the Congress fully and currently informed. One of the congressional oversight committees with which I regularly interact in this capacity is the SSCI, which authored the document described below.

3. Through the exercise of my official duties, I am familiar with this civil action and the underlying Freedom of Information Act ("FOIA") request. The purpose of this declaration is to explain my understanding of the creation and history of the document at issue in this litigation: the current version of the full 6,963-page report authored by the SSCI concerning the CIA's former detention and interrogation program (the "Full Report"). To provide context, this declaration also discusses the Executive Summary as well as the Findings and Conclusions of the SSCI's study (the "Executive Summary").

4. As I explain in more detail below, the SSCI "approved" drafts of the Executive Summary and Full Report (collectively, the "Study") in December 2012 and transmitted copies of both documents to the Executive Branch for comment. After the CIA submitted its comments, the SSCI made changes and decided in April 2014 to send an updated version of the Executive Summary -- but not the Full Report –– to the President for declassification. The SSCI made additional changes to the Executive Summary and Full Report during the declassification process and publicly released a redacted, declassified version of the Executive Summary in December 2014.

5. The statements in this declaration are based on my personal knowledge and information made available to me in my official capacity. Specifically, these assertions are drawn from my own interactions with the SSCI, consultations with other CIA officials, a review of the relevant documentary record, and other information made available to me in my official capacity.

**I. Plaintiffs' FOIA Request**

6. By letter dated February 13, 2013, plaintiffs requested "disclosure of the recently adopted report of the Senate Select Committee on Intelligence relating to the CIA's post-9/11 program of rendition, detention, and interrogation." A true and correct copy of this letter is attached hereto as Exhibit A.

7. The Agency responded by letter dated February 22, 2013, and advised plaintiffs that the requested report was a "Congressionally generated and controlled document that is not subject to the FOIA's access provisions" and, accordingly, the CIA informed plaintiffs that it could not accept the request. A true and correct copy of this letter is attached hereto as Exhibit B. This lawsuit followed.

8. The SSCI continued to make changes to the Full Report during the pendency of this lawsuit. The Agency now has at least three different versions of the Full Report in its possession: a December 2012 version, a Summer 2014 version, and the final December 2014 version.

9. Plaintiffs submitted a new FOIA request on May 6, 2014 seeking "the updated version of the Senate Select Committee on Intelligence's Report." A true and correct copy of this letter is attached hereto as Exhibit C. The Agency has not issued a substantive response to that request. The plaintiffs amended their complaint on June 5, 2014, to seek the release of the "Updated SSCI Report." The Agency has interpreted this to refer to the most current and final version of the Full Report -- the December 2014 version. I understand that the plaintiffs are no longer seeking the Executive Summary.

**II. Initial Drafting of SSCI Work Product**

10. In its congressional oversight role, the SSCI advised the CIA in March 2009 that it planned to conduct a review of the CIA’s former detention and interrogation program. At the outset, the SSCI requested access to broad categories of CIA documents related to how the program was created, operated, and maintained, which would form the basis of SSCI’s review. Due to the volume and the highly sensitive and compartmented nature of the classified information at issue, the CIA determined that in order to properly safeguard classified equities, the SSCI’s review of Agency records would need to take place at CIA facilities.

11. Following discussions with the Committee, the CIA and SSCI reached an inter-branch accommodation that respected both the President’s constitutional authorities over classified information and the Congress’s constitutional authority to conduct oversight of the Executive Branch. Under this accommodation, the CIA established a secure electronic reading room at an Agency facility where designated SSCI personnel could review these highly classified materials. In addition, the CIA created a segregated network share drive at this facility that allowed members of the Committee and staffers to prepare and store their work product, including draft versions of the Full Report, in a secure environment.

12. One key principle necessary to this inter-branch accommodation, and a condition upon which SSCI insisted, was that the materials created by SSCI personnel on this segregated shared drive would not become "agency records" even if those documents were stored on a CIA computer system or at a CIA facility. Specifically, in a June 2, 2009, letter from the SSCI Chairman and Vice Chairman to the Director of the CIA, the Committee expressly stated that the SSCI's work product, including "draft and final recommendations, reports or other materials generated by Committee staff or Members," are "the property of the Committee" and "remain congressional records in their entirety." The SSCI further explained that the "disposition and control over these records, even after the completion of the Committee's review, lies exclusively with the Committee." As such, the Committee stated that "these records are not CIA records under the Freedom of Information Act or any other law" and that the CIA "may not integrate these records into its records filing systems, and may not disseminate or copy them, or use them for any purpose without prior written authorization from the Committee." Finally, the SSCI requested that in response to a FOIA request seeking these records, the CIA should "respond to the request or demand based upon the understanding that these are congressional, not CIA, records." The full passage reads as follows:

> Any documents generated on the [segregated shared drive], as well as any other notes, documents, draft and final recommendations, reports or other materials generated by Committee staff or Members, are the property of the Committee and will be kept at the Reading Room [at an Agency facility] solely for secure safekeeping and ease of reference. These documents remain congressional records in their entirety and disposition and control over these records, even after the Committee's review, lies exclusively with the Committee. As such, these records are not CIA records under the Freedom of Information Act or any other law. The CIA may not integrate these records into its records filing systems, and may not disseminate or copy them, or use them for any purpose without authorization of the Committee. The CIA will return the records to the Committee immediately upon request in a manner consistent with [security procedures outlined elsewhere]. If the CIA receives any request or demand for access to these records from outside the CIA under the Freedom of Information Act or any other authority, the CIA will immediately notify the Committee and will respond to the request or demand based upon the understanding that these are congressional, not CIA, records.

A true and correct copy of this letter is attached hereto as Exhibit D.

13. Based on this inter-branch accommodation, SSCI personnel used the segregated shared drive to draft the document that is the subject of this litigation. As sections of their work product reached a certain stage, the SSCI worked with the CIA information technology and security personnel to transfer these drafts from the segregated shared drive to the SSCI's secure facilities at the U.S. Capitol complex so that the SSCI could complete the drafting process in its own workspace.

14. CIA understands that the SSCI made changes to its work product following the transfers. Thus, it is the Agency's understanding that the draft versions of the Full Report and Executive Summary that SSCI approved in December 2012 do not reside in the CIA facility described in the preceding paragraph. Nonetheless, the restrictions governing the SSCI's initial work product have informed how the CIA has treated versions of the SSCI's work product in the Agency's possession.

## III. SSCI's Treatment of the Full Report

### A. December 2012: Approval and Transmission of the Initial Draft

15. On December 13, 2012, the SSCI decided in closed session to "approve" a draft of the Study –- both the Executive Summary and the Full Report -- and transmit it to the Executive Branch for review. The SSCI Staff Director notified the CIA and other federal agencies of the decision by e-mail that evening. He indicated that his staff would transmit a "limited number of hard copies" of the Study to the White House, the Office of the Director of National Intelligence, the CIA, and the Department of Justice for review. He also noted that his staff would provide copies of the Study only to specific individuals identified in advance to the Chairman. The Staff Director's e-mail indicates that these limitations on dissemination and access were imposed pursuant to "the motion adopted by the

Committee." A true and correct copy of this e-mail (with appropriate redactions) is attached hereto as Exhibit E.

16. Soon thereafter, the CIA provided the Committee with a list of Agency officers who would review the Executive Summary and Full Report on behalf of the CIA. The Committee approved access for these individuals for the limited purpose of providing comments in response to the Study. The CIA subsequently conducted a thorough review of the Study and drafted a lengthy response, a process that necessitated increasing the number of officers who had access to the Full Report or portions of the Full Report. However, access to that version of the document remained confined to authorized CIA personnel with the requisite security clearances and a need-to-know, and for the limited purpose of assisting the Agency in its interactions with the SSCI with respect to the Study and the Agency's response.[1]

**B. April 2014: SSCI's Decision to Send the Executive Summary to the President for Declassification**

17. The SSCI revised the Executive Summary and Full Report after considering the CIA's comments. The SSCI then met in closed session on April 3, 2014, to determine the proper disposition of those documents. The Committee ultimately

[1] In addition, a small number of Agency personnel have reviewed portions of the Full Report for the limited purpose of assessing the proper classification of its contents or responding to FOIA requests.

decided to approve the updated versions and to send the Executive Summary to the President for declassification and eventual public release. My understanding is that the Committee did not approve declassification or release of the Full Report.

18. Because the April 3, 2014, decision was made in closed session, the exact text of the motion approved by the Committee is not publicly available. But it is clear from the public statements of SSCI members that the Committee did not decide to declassify or release the Full Report. For example, the SSCI Chairman noted in a press release announcing the April 3 decision that the Full Report would be "held for declassification at a later time." A true and correct copy of the press release is attached hereto as Exhibit F. The Chairman later explained in her foreword to the Executive Summary that she "chose not to seek declassification of the full Committee Study at this time" because "declassification of the more than six thousand page report would have significantly delayed the release of the Executive Summary."[2]

**C. December 2014: SSCI's Release of the Executive Summary**

19. The SSCI and the Executive Branch had many discussions after April 2014 regarding the Executive Summary, and the SSCI continued to edit the document in light of those discussions.

---

[2] A copy of the Chairman's foreword is available on the SSCI website: www.intelligence.senate.gov/study2014.html.

It is my understanding that the SSCI also made conforming changes to the Full Report as it updated the Executive Summary.

20. When the SSCI and the Executive Branch concluded their discussions, the Director of National Intelligence declassified a partially redacted version of the Executive Summary. The SSCI then publicly released the Executive Summary, along with minority views and the additional views of various Committee members, on December 9, 2014. To the best of my knowledge, that was the last official action of the full Committee in connection with its study of the CIA's detention and interrogation program.

**IV. The CIA's Treatment of the Full Report**

21. In addition to the December 2012 draft, the SSCI Chairman transmitted at least two updated versions of the Full Report to the President and other agencies. The CIA received an updated version in the summer of 2014 and another updated version in December 2014. The December 2014 version is considered the final version of the Full Report.

22. All three versions of the Full Report are marked TOP SECRET, with additional access restrictions noted based on the sensitive compartmented information contained in them. The Full Report discusses intelligence operations, foreign relations, and other classified matters at length and in great detail.

23. The Agency has used the Full Report only for limited reference purposes. When the SSCI provided the CIA with a copy

of the Full Report in December 2012, it did so for the sole purpose of allowing the Agency to review the document and provide comments. Indeed, the Committee placed express restrictions on dissemination of the Full Report. The CIA accordingly gave only a limited number of officers access to the December 2012 version of the Full Report for the limited purpose permitted by the SSCI: as a reference used when preparing the CIA's response.

24. Access to the subsequent versions transmitted in the summer of 2014 and December 2014 has been even more tightly controlled by CIA, and their use by CIA has been limited to reference purposes.

* * *

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of January 2015.

Neal Higgins
Director, Office of Congressional Affairs
Central Intelligence Agency

# Exhibit A

NATIONAL SECURITY PROJECT

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

F-2013-00829

February 14, 2013

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: 703.613.3007

To the Information and Privacy Coordinator:

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

The accompanying FOIA Request was submitted in hard-copy format as an overnight parcel via USPS on February 13, 2013. At 11:07 this morning, I received an electronic notice from the USPS that a delivery had been attempted but failed at the above mailing address. A representative at the CIA's FOIA hotline informed me that a member of your team will soon pick up the parcel from the post office holding it. In the meantime, please accept this Fax version of the Request as a substitute, and begin processing immediately.

FEB 14 2013

Zachary E. L.
Zachary Evan Levine
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
Tel: 212.284.7322
Fax: 212.549.2654
Email: zlevine@aclu.org

NATIONAL SECURITY PROJECT

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

February 13, 2013

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

Office of Information Programs and Services, A/GIS/IPS/RL
U.S. Department of State
Washington, D.C. 20522-8100

Carmen L. Mallon, Chief of Staff
Office of Information Policy
U.S. Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530-0001

**Re:** **Request Under Freedom of Information Act / Expedited Processing Requested**

To Whom It May Concern:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and various relevant implementing regulations, *see* 32 C.F.R. § 1900 (Central Intelligence Agency); 28 C.F.R. § 16.1 (Department of Justice); 32 C.F.R. § 286 (Department of Defense); and 22 C.F.R. § 171.10 *et seq.* (Department of State). The Request is submitted by the American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU" or the "Requesters").[1]

---

[1] The American Civil Liberties Union is a non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union Foundation is a separate 26 U.S.C.

Requesters seek the disclosure of the recently adopted report of the Senate Select Committee on Intelligence relating to the CIA's post-9/11 program of rendition, detention, and interrogation (the "Report").

* * *

The Senate Select Committee on Intelligence ("SSCI") voted on Thursday, December 13, 2012, to approve a report detailing the findings of its three-year investigation of the CIA's rendition, detention, and interrogation program in the years after 9/11. According to the SSCI chairperson, the Report—which totals nearly 6,000 pages—is "the most definitive review" to be conducted of the CIA's program, including the Agency's use of so-called "enhanced interrogation techniques." *See, e.g.*, Benjamin Wittes, *Senate Intelligence Committee Interrogation Report Approved—But Not Released*, Lawfare, Dec. 14, 2012, http://bit.ly/Vw1twf; Natasha Lennard, *Senate-Approved CIA Torture Report Kept Under Wraps*, Salon, Dec. 14, 2012, http://bit.ly/SWHsgh; Scott Shane, *Senate Panel Approves Findings Critical of Detainee Interrogations*, N.Y. Times, Dec. 13, 2012, http://nyti.ms/VwdORk; Carrie Johnson, *Report On CIA Interrogation Tactics Revives Torture Debate*, NPR, Dec. 13, 2012, http://n.pr/VDKWm0; Mark Hosenball, *Senators to Vote on Probe of CIA Interrogation Program*, Reuters, Dec. 6, 2012, http://reut.rs/RbuL3T.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

In the course of its investigation, which began in 2009, the SSCI reviewed millions of pages of records documenting the day-to-day operations of the CIA's interrogation program. The Commission's intent was to produce "a detailed, factual description of how interrogation techniques were used, the conditions under which detainees were held, and the intelligence that was—or wasn't—gained from the program." Joint Statement from Senator Dianne Feinstein, Chairman, Senate Intelligence Committee, and Senator Carl Levin, Chairman, Senate Armed Services Committee, Apr. 27, 2012, http://1.usa.gov/IKjkq0.

The Report is of clear and enormous public importance. The American public has a right to know the full truth, based on a comprehensive government investigation, about the torture and other abusive treatment of detainees authorized by officials at the highest levels of our government.

§ 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes the American Civil Liberties Union's members to lobby their legislators.

According to SSCI members, the Report puts to rest claims that the use of torture led to the capture of Osama bin Laden, a topic that continues to generate public debate. The Committee chairperson, Senator Feinstein, has said—based on her familiarity with the Committee's investigation—that "none of [the evidence that led to bin Laden] came as a result of harsh interrogation practices." Scott Shane and Charlie Savage, *Bin Laden Raid Revives Debate on Value of Torture*, N.Y. Times, May 3, 2011, http://nyti.ms/jDg9Ob; Mark Hosenball, *Exclusive: Senate Probe Finds Little Evidence of Effective "Torture,"* Reuters, Apr. 7, 2012, http://reut.rs/ItLmpH.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Release of the Report is therefore critical to ensure timely public access to a congressional investigative report of historic significance. Other official investigative reports have been made available to the public: for example, the Senate Armed Services Committee Report, which concerned the Department of Defense's involvement in detainee abuses, was released in full in April 2009. The SSCI's Report likewise ought to be released.

## I. Record Requested

Requesters seek disclosure of the SSCI's recently adopted report on the CIA's rendition, detention, and interrogation program in the years following 9/11.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that the Report be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession.

## II. Application for Expedited Processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 32 C.F.R. § 1900.34(c); 28 C.F.R. § 16.5(d); 32 C.F.R. § 286.4(d)(3); and 22 C.F.R. § 171.12(b). There is a "compelling need" for these records, as defined in the statute and regulations, because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity. 5 U.S.C. § 552(a)(6)(E)(v); *see also* 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii); 22 C.F.R. § 171.12(b)(2). In addition, the records sought relate to a "breaking news story of general public interest." 32 C.F.R. § 1900.34(c)(2) (providing for expedited processing when "the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity"); *see also* 32 C.F.R. § 286.4(d)(3)(ii)(A); 22 C.F.R. § 171.12(b)(2)(i).

A. *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and relevant regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii); 22 C.F.R. § 171.12(b)(2). *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding that a non-profit, public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information" (internal citation omitted)); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding Leadership Conference—whose mission is "to serve as the site of record for relevant and up-to-the-minute civil rights news and information" and to "disseminate[] information regarding civil rights and voting rights to educate the public [and] promote effective civil rights laws"—to be "primarily engaged in the dissemination of information").

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Dissemination of information about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. The ACLU disseminates this information to educate the public and promote the protection of civil liberties. The ACLU's regular means of disseminating and editorializing information obtained through FOIA requests include: a paper newsletter distributed to approximately 450,000 people; a bi-weekly electronic newsletter distributed to approximately 300,000 subscribers; published reports, books, pamphlets, and fact sheets; a widely read blog; heavily visited websites, including an accountability microsite, http://www.aclu.org/accountability; and a video series.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news.[2] ACLU attorneys are interviewed frequently for news stories about

---

[2] *See, e.g.*, Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement*, Sept. 14, 2012, http://www.aclu.org/node/36742; Press Release, American Civil Liberties Union, *FOIA Documents Show FBI Using "Mosque Outreach" for Intelligence Gathering*, Mar. 27, 2012, http://www.aclu.org/national-security/foia-documents-show-fbi-using-mosque-outreach-intelligence-gathering; Press Release, American Civil Liberties Union, *FOIA Documents Show FBI Illegally Collecting Intelligence Under Guise of "Community Outreach,"* Dec. 1, 2011, http://www.aclu.org/national-security/foia-documents-show-fbi-illegally-collecting-intelligence-under-guise-community; Press Release, American Civil Liberties Union, *FOIA Documents from FBI Show Unconstitutional Racial Profiling*, Oct. 20, 2011, http://www.aclu.org/national-security/foia-documents-fbi-show-unconstitutional-racial-profiling; Press Release, American Civil Liberties Union, *Documents Obtained by ACLU Show Sexual Abuse of Immigration Detainees is Widespread National Problem*, Oct. 19,

documents released through ACLU FOIA requests.[3]

The ACLU website specifically includes features on information about actual or alleged government activity obtained through FOIA.[4] For example, the ACLU maintains an online "Torture Database," a compilation of over 100,000 FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[5] The ACLU also maintains a "Torture FOIA" webpage containing commentary about the ACLU's FOIA request, press releases, and analysis of the FOIA documents.[6] (That webpage also notes that the ACLU, in collaboration with Columbia University Press, has published a book about the documents obtained through FOIA. *See* Jameel Jaffer & Amrit Singh, *Administration of Torture: A Documentary Record from Washington to Abu Ghraib and Beyond* (Columbia Univ. Press 2007)). Similarly, the ACLU's webpage about the Office of Legal Counsel ("OLC") torture memos obtained through FOIA contains commentary and analysis of the memos; an original, comprehensive chart summarizing the memos; links to web features created by ProPublica (an independent, non-profit, investigative-journalism organization) based on the ACLU's information gathering, research, and analysis; and ACLU videos about the memos.[7] In

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

2011, http://www.aclu.org/immigrants-rights-prisoners-rights-prisoners-rights/documents-obtained-aclu-show-sexual-abuse; Press Release, American Civil Liberties Union, *New Evidence of Abuse at Bagram Underscores Need for Full Disclosure About Prison, Says ACLU*, June 24, 2009, http://www.aclu.org/national-security/new-evidence-abuse-bagram-underscores-need-full-disclosure-about-prison-says-aclu.

[3] *See, e.g.*, Carrie Johnson, *Delay in Releasing CIA Report Is Sought; Justice Dep't Wants More Time to Review IG's Findings on Detainee Treatment*, Wash. Post, June 20, 2009 (quoting ACLU staff attorney Amrit Singh); Peter Finn & Julie Tate, *CIA Mistaken on 'High-Value' Detainee, Document Shows*, Wash. Post, June 16, 2009 (quoting ACLU staff attorney Ben Wizner); Scott Shane, *Lawsuits Force Disclosures by C.I.A.*, N.Y. Times, June 10, 2009 (quoting ACLU National Security Project director Jameel Jaffer); Joby Warrick, *Like FBI, CIA Has Used Secret 'Letters,'* Wash. Post, Jan. 25, 2008 (quoting ACLU staff attorney Melissa Goodman).

[4] *See, e.g.*, http://www.aclu.org/national-security/predator-drone-foia; http://www.aclu.org/national-security/anwar-al-awlaki-foia-request; http://www.aclu.org/torturefoia; http://www.aclu.org/olcmemos; http://www.aclu.org/mappingthefbi; http://www.aclu.org/national-security/bagram-foia; http://www.aclu.org/safefree/torture/csrtfoia.html; http://www.aclu.org/natsec/foia/search.html; http://www.aclu.org/safefree/nsaspying/30022res20060207.html; http://www.aclu.org/patriotfoia; http://www.aclu.org/spyfiles; http://www.aclu.org/safefree/nationalsecurityletters/32140res20071011.html; and http://www.aclu.org/exclusion.

[5] http://www.torturedatabase.org.

[6] http://www.aclu.org/torturefoia.

[7] http://www.aclu.org/safefree/general/olc_memos.html.

addition to websites, the ACLU has produced an in-depth television series on civil liberties, which has included analysis and explanation of information the ACLU has obtained through FOIA.

The ACLU plans to analyze and disseminate to the public the information gathered through this Request. The record requested is not sought for commercial use, and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.[8]

*B. The record sought is urgently needed to inform the public about actual or alleged government activity.*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

The SSCI Report is urgently needed to inform the public about actual or alleged government activity; moreover, this document relates to a breaking news story of general public interest, specifically, the CIA's rendition, detention and interrogation program and its authorization of abusive techniques between 2002 and 2009. *See* 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii)(A); 22 C.F.R. § 171.12(b)(2).

We make this Request to further the public's understanding of the CIA's program and the role of senior officials in conceiving of and authorizing the use of abusive interrogation techniques in the wake of September 11, 2001. The public has and continues to manifest an abiding interest in the conduct of the CIA and other executive agencies with respect to individuals seized, detained, and interrogated for counterterrorism purposes. While U.S. intelligence officials have acknowledged that the CIA used harsh and coercive interrogation techniques, Congress's investigation sets forth the most comprehensive account to date of what happened and why, and it is imperative that its findings be made public.

Over the past year, national news stories have highlighted the significance of the SSCI investigation for the public record. In the run-up to the committee vote last December, a host of articles and editorials were published emphasizing how important it is for the Report to be made public. *See, e.g.*, Ed Pilkington, *Senate Under Pressure to Release Mammoth Report on CIA Interrogation*, The Guardian (U.K.), Dec. 13, 2012, http://bit.ly/VECh2J; *US Senate Panel to Vote on CIA Interrogations Report*, AFP, Dec. 11, 2012, http://bit.ly/Z0ah1A; Carolyn

[8] In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools, and organizations through a variety of means, including their own websites, publications, and newsletters. Further, the ACLU makes archived materials available at the American Civil Liberties Union Archives at Princeton University Library.

Lochhead, *Dianne Feinstein Torture Report May Conflict with Bin Laden Movie*, SFGate Blog, Dec. 11, 2012, http://bit.ly/USwxpI; Matt Bewig, *Senate Report on CIA Torture Techniques May Remain Secret*, AllGov, Dec. 10, 2012, http://bit.ly/VLaXWE; Jim Kouri, *Senate Democrats Urge Probe of CIA Interrogations During Bush Years*, Examiner, Dec. 7, 2012, http://exm.nr/TZTQuk; Mark Hosenball, *Senators to Vote on Probe of CIA Interrogation Program*, Reuters, Dec. 6, 2012, http://reut.rs/RbuL3T; Editorial, *Our View: Snowe, Committee Should Release Torture Report*, Portland Press Herald, Nov. 23, 2012, http://bit.ly/RYpVnf. For the past several weeks, nationwide media outlets have continued to call for the Report's public release, emphasizing its critical importance. *See, e.g.*, Mark Hosenball, *CIA Nominee Had Detailed Knowledge of "Enhanced Interrogation Techniques,"* Reuters, Jan. 30, 2013, http://reut.rs/XgF44v; Matt Sledge, *John Brennan Nomination Seen As Opening to Push for CIA Torture Report Release*, Huffington Post, Jan. 8, 2013, http://huff.to/VD00SR; Conor Friedersdorf, *Does it Matter if John Brennan was Complicit in Illegal Torture?*, The Atlantic, Jan. 8, 2013, http://bit.ly/Wqxu5u; Adam Serwer, *Obama's CIA Pick to Face Questions on Torture*, Mother Jones, Jan. 8, 2013, http://bit.ly/VNAfiw.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

The contents of the Report will inform urgent and ongoing debate about the CIA interrogation program. The SSCI Report provides "the public with a comprehensive narrative of how torture insinuated itself into U.S. policy," a narrative that "is of more than historical interest" as the nation's lawmakers move forward. Editorial, *Free the Torture Report*, L.A. Times, Apr. 27, 2012, http://lat.ms/ImBMZ9. *See also* Scott Shane, *No Charges Filed on Harsh Tactics Used by the C.I.A.*, N.Y. Times, Aug. 30, 2012, http://nyti.ms/RuZNRX; Mark Hosenball, *Exclusive: Senate Probe Finds Little Evidence of Effective "Torture,"* Reuters, Apr. 27, 2012, http://reut.rs/ItLmpH; Marcy Wheeler, *Right on Cue, the Counter-Argument to the Torture Apology Comes Out*, Empty Wheel, Apr. 27, 2012, http://bit.ly/Ihha6s.

Expedited processing should be granted.

## III. Application for Waiver or Limitation of Fees

*A. Release of the record is in the public interest.*

We request a waiver of search, review, and reproduction fees on the grounds that disclosure of the requested record is in the public interest because it is likely to contribute significantly to the public understanding of the United States government's operations or activities and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 1900.13(b)(2); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); and 22 C.F.R. § 171.17.

The SSCI Report will significantly contribute to public understanding of the government's operations or activities. Moreover, disclosure is not in the ACLU's commercial interest. Any information obtained by the ACLU as a result of this FOIA request will be available to the public at no cost. *See* 32 C.F.R. § 1900.13(b)(2); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); 22 C.F.R. § 171.17.

Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (finding that "disclosure, not secrecy, is the dominant objective of the Act," quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1992)).

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

*B. The ACLU qualifies as a representative of the news media.*

A waiver of search and review fees is warranted because the ACLU qualifies as a "representative of the news media" and the SSCI Report is not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 32 C.F.R. § 1900.02(h)(3); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); 22 C.F.R. § 171.17. Accordingly, fees associated with the processing of this request should be "limited to reasonable standard charges for document duplication."

The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Nat'l Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *cf. Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is a "representative of the news media" for the same reasons that it is "primarily engaged in the dissemination of information." *See Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for FOIA purposes).[9] Indeed, the ACLU recently was held

[9] On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU. In June 2011, the National Security Division of the Department of Justice granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT

to be a "representative of the news media." *Serv. Women's Action Network v. Dep't of Defense*, No. 3:11CV1534 (MRK), 2012 WL 3683399, at *3 (D. Conn. May 14, 2012). *See also Am. Civil Liberties Union of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding ACLU of Washington to be a "representative of the news media"), *reconsidered in part on other grounds*, 2011 WL 1900140 (W.D. Wash. May 19, 2011).

* * *

Pursuant to applicable statute and regulations, we expect a determination regarding expedited processing within ten (10) calendar days. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 32 C.F.R. § 1900.21(d); 28 C.F.R. § 16.5(d)(4); 32 C.F.R. § 286.4(d)(3); 22 C.F.R. § 171.12(b).

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

If the request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

Please furnish the applicable records to:

Mitra Ebadolahi
American Civil Liberties Union
125 Broad Street

Act. In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request submitted in December 2008. The Department of Justice granted a fee waiver to the ACLU with regard to the same FOIA request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in November of 2006. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The Department of Justice did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

18th Floor
New York, NY 10004

Thank you for your prompt attention to this matter.

I hereby certify that the foregoing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Mitra Ebadolahi
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
Tel: 212.284.7305
Fax: 212.549.2654
Email: mebadolahi@aclu.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

# Exhibit B

Central Intelligence Agency

Washington, D.C. 20505

22 February 2013

Ms. Mitra Ebadolahi
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Reference: F-2013-00829

Dear Ms. Ebadolahi:

This is a final response to your 13 February 2013 Freedom of Information Act (FOIA) request, submitted on behalf of the American Civil Liberties Union Foundation. Your request was received in the office of the Information and Privacy Coordinator on 14 February 2013, and sought "the disclosure of the recently adopted report of the Senate Select Committee on Intelligence relating to the CIA's post-9/11 program of rendition, detention, and interrogation (the 'Report')."

You have requested a Congressionally generated and controlled document that is not subject to the FOIA's access provisions. Therefore, the Agency cannot accept your request.

Sincerely,

Michele Meeks
Information and Privacy Coordinator

# Exhibit C

LEGAL DEPARTMENT

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

F-2014-01530

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
LEGAL DEPARTMENT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
F/212.549.2651
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

RICHARD ZACKS
TREASURER

May 6, 2014

MAY -7 2014

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

Office of Information Programs and Services, A/GIS/IPS/RL
U.S. Department of State
Washington, D.C. 20522-8100

Carmen L. Mallon, Chief of Staff
Office of Information Policy
U.S. Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530-0001

Re: **Request Under Freedom of Information Act / Expedited Processing Requested**

To Whom It May Concern:

This letter constitutes a request ("Request") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and various relevant implementing regulations, *see* 32 C.F.R. § 1900 (Central Intelligence Agency); 28 C.F.R. § 16.1 (Department of Justice); 32 C.F.R. § 286 (Department of Defense); and 22 C.F.R. § 171.10 *et seq.* (Department of State). The Request is submitted by the American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU" or the "Requesters").[1]

[1] The American Civil Liberties Union is a non-profit 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union Foundation is a separate 26 U.S.C.

Requesters seek the disclosure of the updated version of the Senate Select Committee on Intelligence's report, *Study of the CIA's Detention and Interrogation Program* (the "Revised Report"). *See* Letter from Sen. Dianne Feinstein to President Barack Obama (Apr. 7, 2014), http://bit.ly/OKXyvw (describing the Revised Report).

* * *

In March 2009, the Senate Select Committee on Intelligence ("SSCI" or "Committee") began an investigation into the CIA's post-9/11 program of rendition, secret detention, torture, and other cruel, inhuman, and degrading treatment of detainees. In the course of its investigation, the SSCI reviewed six million pages of government records documenting the treatment of detainees in CIA custody. The SSCI's intent was to produce "a detailed, factual description of how interrogation techniques were used, the conditions under which detainees were held, and the intelligence that was—or wasn't—gained from the program." Joint Statement from Senator Dianne Feinstein, Chairman, Senate Intelligence Committee, and Senator Carl Levin, Chairman, Senate Armed Services Committee (Apr. 27, 2012), http://1.usa.gov/IKjkq0.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

At the end of 2012, the SSCI completed its *Study of the CIA's Detention and Interrogation Program*, which spans more than 6,000 pages, includes 35,000 footnotes, and cost $40 million to produce (the "Initial Report"). On December 13, 2012, the SSCI formally adopted the Initial Report. *See* S. Rep. No. 113-7, at 13 (Mar. 22, 2013). The SSCI subsequently disseminated the Initial Report to Executive Branch agencies. After reviewing comments by the CIA and minority views of Committee Republicans, the SSCI made changes to the Initial Report, which led to the SSCI's adoption of the Revised Report.

On April 3, 2014, the SSCI voted to send the "Findings and Conclusions" and "Executive Summary" of the Revised Report to the Executive Branch for declassification review. *See* Press Release, Sen. Feinstein, Intelligence Committee Votes to Declassify Portions of CIA Study (Apr. 3, 2014), http://1.usa.gov/1hlYOkt. In her transmittal letter to President Obama, SSCI Chairman Senator Feinstein stated that the Revised Report should be viewed as "the authoritative report on the CIA's actions," and that she would be transmitting the Revised Report to appropriate Executive Branch agencies. *See* Letter from Sen. Feinstein to President Obama, http://bit.ly/OKXyvw.

§ 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, and provides analyses of pending and proposed legislation.

The Revised Report is of clear and enormous public importance. The American public has a right to know the full truth, based on a comprehensive government investigation, about the torture and other abusive treatment of detainees authorized by officials at the highest levels of our government. The Revised Report is a crucial part of the historical record on the United States' abusive interrogation practices, as well as current and future public discussion about the CIA's treatment of detainees during the administration of President George W. Bush. Indeed, President Obama urged the Committee to complete the Revised Report and send it to the Executive Branch for declassification, "so that the American people can understand what happened in the past, and that can help guide us as we move forward." Jennifer Epstein, *Barack Obama Weighs in on Senate-CIA Flap*, Politico, Mar. 12, 2014, http://politi.co/1eproSL.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

According to Senator Feinstein, the Revised Report "exposes brutality that stands in stark contrast to our values as a nation. It chronicles a stain on our history that must never again be allowed to happen." Press Release, Sen. Feinstein, Intelligence Committee Votes to Declassify Portions of CIA Study, http://1.usa.gov/1hlYOkt. In addition to chronicling the CIA's detention and torture of detainees, the Revised Report "raises serious concerns about the CIA's management" of its detention and torture program. Press Release, Sens. Susan Collins and Angus King, Collins, King Announce Support for Declassification of Intelligence Committee Report on CIA Detention & Interrogation Program (Apr. 2, 2014), http://1.usa.gov/1kws9vI. Specifically, the Revised Report "concludes that the spy agency repeatedly misled Congress, the White House, and the public about the benefits" of the CIA's torture program. David S. Joachim, *Senate Panel Votes to Reveal Report on C.I.A. Interrogations*, N.Y. Times, Apr. 3, 2014, http://nyti.ms/1eejlaR; *see also* Letter from Sen. Mark Udall to President Barack Obama, Mar. 4, 2014, http://bit.ly/1hwpU9p (noting that "much of what has been declassified and released about the operation, management and effectiveness of the CIA's Detention and Interrogation Program is simply wrong. These inaccuracies are detailed in the 6,300 page Committee Study[.]").

Release of the Revised Report is therefore critical to ensure timely public access to a congressional investigative report of historic significance. For much of the last decade, the legality and wisdom of the CIA's practices, as well as the resulting harm to individuals' human rights, our nation's values, and our national security, have been matters of intense and ongoing public debate. A fair public debate of these issues must be informed by the Revised Report. Other official investigative reports have been made available to the public: for example, the Senate Armed Services Committee Report, which concerned the Department of

Defense's involvement in detainee abuses, was released in full in April 2009. The SSCI's Revised Report likewise ought to be released.

## I. Record Requested

Requesters seek disclosure of the SSCI's recently revised report on the CIA's rendition, detention, and interrogation program in the years following 9/11.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), we request that the Revised Report be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

## II. Application for Expedited Processing

We request expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 32 C.F.R. § 1900.34(c); 28 C.F.R. § 16.5(d); 32 C.F.R. § 286.4(d)(3); and 22 C.F.R. § 171.12(b). There is a "compelling need" for these records, as defined in the statute and regulations, because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity. 5 U.S.C. § 552(a)(6)(E)(v); *see also* 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii); 22 C.F.R. § 171.12(b)(2). In addition, the records sought relate to a "breaking news story of general public interest." 32 C.F.R. § 1900.34(c)(2) (providing for expedited processing when "the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity"); *see also* 32 C.F.R. § 286.4(d)(3)(ii)(A); 22 C.F.R. § 171.12(b)(2)(i); 28 C.F.R. § 16.5(d)(1)(iv).

### A. *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and relevant regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii); 22 C.F.R. § 171.12(b)(2). *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding that a non-profit, public-interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information" (internal citation omitted)); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding Leadership

Conference—whose mission is "to serve as the site of record for relevant and up-to-the-minute civil rights news and information" and to "disseminate[] information regarding civil rights and voting rights to educate the public [and] promote effective civil rights laws"—to be "primarily engaged in the dissemination of information").

Dissemination of information about actual or alleged government activity is a critical and substantial component of the ACLU's mission and work. The ACLU disseminates this information to educate the public and promote the protection of civil liberties. The ACLU's regular means of disseminating and editorializing information obtained through FOIA requests include: a paper newsletter distributed to approximately 450,000 people; a bi-weekly electronic newsletter distributed to approximately 300,000 subscribers; published reports, books, pamphlets, and fact sheets; a widely read blog; heavily visited websites, including an accountability microsite, http://www.aclu.org/accountability; and a video series.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news.[2] ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[3]

---

[2] *See, e.g.*, Release, American Civil Liberties Union, *Documents Show FBI Monitored Bay Area Occupy Movement*, Sept. 14, 2012, http://www.aclu.org/node/36742; Press Release, American Civil Liberties Union, *FOIA Documents Show FBI Using "Mosque Outreach" for Intelligence Gathering*, Mar. 27, 2012, http://www.aclu.org/national-security/foia-documents-show-fbi-using-mosque-outreach-intelligence-gathering; Press Release, American Civil Liberties Union, *FOIA Documents Show FBI Illegally Collecting Intelligence Under Guise of "Community Outreach,"* Dec. 1, 2011, http://www.aclu.org/national-security/foia-documents-show-fbi-illegally-collecting-intelligence-under-guise-community; Press Release, American Civil Liberties Union, *FOIA Documents from FBI Show Unconstitutional Racial Profiling*, Oct. 20, 2011, http://www.aclu.org/national-security/foia-documents-fbi-show-unconstitutional-racial-profiling; Press Release, American Civil Liberties Union, *Documents Obtained by ACLU Show Sexual Abuse of Immigration Detainees is Widespread National Problem*, Oct. 19, 2011, http://www.aclu.org/immigrants-rights-prisoners-rights-prisoners-rights/documents-obtained-aclu-show-sexual-abuse; Press Release, American Civil Liberties Union, *New Evidence of Abuse at Bagram Underscores Need for Full Disclosure About Prison, Says ACLU*, June 24, 2009, http://www.aclu.org/national-security/new-evidence-abuse-bagram-underscores-need-full-disclosure-about-prison-says-aclu.

[3] *See, e.g.*, Carrie Johnson, *Delay in Releasing CIA Report Is Sought; Justice Dep't Wants More Time to Review IG's Findings on Detainee Treatment*, Wash. Post, June 20, 2009 (quoting ACLU staff attorney Amrit Singh); Peter Finn & Julie Tate, *CIA Mistaken on 'High-Value' Detainee, Document Shows*, Wash. Post, June 16, 2009 (quoting ACLU staff attorney Ben Wizner); Scott Shane, *Lawsuits Force Disclosures by C.I.A.*, N.Y. Times, June 10, 2009 (quoting ACLU National Security Project director Jameel Jaffer); Joby Warrick, *Like FBI, CIA Has Used Secret 'Letters,'* Wash. Post, Jan. 25, 2008 (quoting ACLU staff attorney Melissa Goodman).

The ACLU website specifically includes features on information about actual or alleged government activity obtained through FOIA.[4] For example, the ACLU maintains an online "Torture Database," a compilation of over 100,000 FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[5] Another example is the ACLU's "Mapping the FBI" portal, which analyzes, compiles, and makes available to the public records obtained through the ACLU's FOIA requests for information about the FBI's racial and ethnic "mapping" of American communities. From the Mapping the FBI portal, users can search the FOIA documents by state and subject matter in addition to accessing detailed commentary and analysis about the records and government activities. Beyond websites, the ACLU has produced an in-depth television series on civil liberties, which has included analyses and explanation of information the ACLU has obtained through FOIA.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

The ACLU plans to analyze and disseminate to the public the information gathered through this Request. The record requested is not sought for commercial use, and the Requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.[6]

B. *The record sought is urgently needed to inform the public about actual or alleged government activity.*

The Revised Report is urgently needed to inform the public about actual or alleged government activity; moreover, this document relates to a breaking news story of general public interest, specifically, the CIA's rendition, detention and interrogation program and its authorization of abusive techniques after September 11, 2001. *See* 32 C.F.R. § 1900.34(c)(2); 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii)(A); 22 C.F.R. § 171.12(b)(2).

---

[4] *See, e.g.*, http://www.aclu.org/national-security/predator-drone-foia; http://www.aclu.org/national-security/anwar-al-awlaki-foia-request; http://www.aclu.org/mappingthefbi; http://www.aclu.org/national-security/bagram-foia; http://www.aclu.org/safefree/torture/csrtfoia.html; http://www.aclu.org/safefree/nsaspying/30022res20060207.html; http://www.aclu.org/patriotfoia; http://www.aclu.org/spyfiles; and http://www.aclu.org/safefree/nationalsecurityletters/32140res20071011.html.

[5] http://www.torturedatabase.org.

[6] In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools, and organizations through a variety of means, including their own websites, publications, and newsletters. Further, the ACLU makes archived materials available at the American Civil Liberties Union Archives at Princeton University Library.

We make this Request to further the public's understanding of the CIA's program and the role of senior officials in conceiving of and authorizing the use of abusive interrogation techniques in the wake of September 11, 2001. The public has and continues to manifest an abiding interest in the conduct of the CIA and other executive agencies with respect to individuals seized, detained, and interrogated for counterterrorism purposes. While U.S. intelligence officials have acknowledged that the CIA used harsh and coercive interrogation techniques, Congress's investigation sets forth the most comprehensive account to date of what happened and why, and it is imperative that its findings be made public.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Over the past eighteen months, national news stories have highlighted the significance of the SSCI investigation for the public record. In the run-up to the Committee vote on the Initial Report in December 2012, a host of articles and editorials were published emphasizing how important it is for the results of the SSCI's investigation to be made public. *See, e.g.*, Ed Pilkington, *Senate Under Pressure to Release Mammoth Report on CIA Interrogation*, The Guardian (U.K.), Dec. 13, 2012, http://bit.ly/VECh2J; Carolyn Lochhead, *Dianne Feinstein Torture Report May Conflict with Bin Laden Movie*, SFGate Blog, Dec. 11, 2012, http://bit.ly/USwxpl; Matt Bewig, *Senate Report on CIA Torture Techniques May Remain Secret*, AllGov, Dec. 10, 2012, http://bit.ly/VLaXWE; Jim Kouri, *Senate Democrats Urge Probe of CIA Interrogations During Bush Years*, Examiner, Dec. 7, 2012, http://exm.nr/TZTQuk; Mark Hosenball, *Senators to Vote on Probe of CIA Interrogation Program*, Reuters, Dec. 6, 2012, http://reut.rs/RbuL3T; Editorial, *Our View: Snowe, Committee Should Release Torture Report*, Portland Press Herald, Nov. 23, 2012, http://bit.ly/RYpVnf.

Similarly, during the weeks leading up to and following the Committee's declassification vote, nationwide media outlets have continued to emphasize the critical importance of the Revised Report. *See, e.g.*, Bradley Klapper, *Feinstein Asks White House to Edit Torture Report*, Associated Press, Apr. 8, 2014, http://bit.ly/1kwLrB1; David S. Joachim, *Senate Panel Votes to Reveal Report on C.I.A. Interrogations*, N.Y. Times, Apr. 3, 2014, http://nyti.ms/1ecjlaR; Ali Watkins, Marisa Taylor, & David Lightman, *Senate Panel Finds CIA Illegally Interrogated Terror Suspects After 9-11*, McClatchy, Apr. 3, 2014, http://bit.ly/1qzYEXj; David Ignatius, *A Tortured Debate Between Congress and the CIA*, Wash. Post, Apr. 1, 2014, http://wapo.st/1hEjfEg; Marisa Taylor & David Lightman, *CIA's Harsh Interrogation Tactics More Widespread Than Thought, Senate Investigators Found*, McClatchy, Apr. 1, 2014, http://bit.ly/1hmoXPY; Greg Miller, Adam Goldman, & Ellen Nakashima, *CIA Misled on Interrogation Program, Senate Report*

*Says*, Wash. Post, Mar. 31, 2014, http://wapo.st/1ecujNM; Bradley Klapper, *Senate Report: Torture Didn't Lead to Bin Laden*, Associated Press, Mar. 31, 2014, http://bit.ly/1i5ZD0t; Mark Mazzetti, *Senate Asks C.I.A. to Share Its Report on Interrogations*, N.Y. Times, Dec. 17, 2013, http://nyti.ms/1cctXqk.

The contents of the Revised Report will inform urgent and ongoing debate about the CIA interrogation program. The Revised Report provides "the public with a comprehensive narrative of how torture insinuated itself into U.S. policy," a narrative that "is of more than historical interest" as the nation's lawmakers move forward. Editorial, *Free the Torture Report*, L.A. Times, Apr. 27, 2012, http://lat.ms/ImBMZ9.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Expedited processing should be granted.

## III. Application for Waiver or Limitation of Fees

*A. Release of the record is in the public interest.*

We request a waiver of search, review, and reproduction fees on the grounds that disclosure of the requested record is in the public interest because it is likely to contribute significantly to the public understanding of the United States government's operations or activities and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 1900.13(b)(2); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); and 22 C.F.R. § 171.17.

The Revised Report will significantly contribute to public understanding of the government's operations or activities. Moreover, disclosure is not in the ACLU's commercial interest. Any information obtained by the ACLU as a result of this FOIA request will be available to the public at no cost. *See* 32 C.F.R. § 1900.13(b)(2); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); 22 C.F.R. § 171.17.

Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)); OPEN Government Act of 2007, Pub. L. No. 110-175, § 2, 121 Stat. 2524 (finding that "disclosure, not secrecy, is the dominant objective of the Act," quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1992)).

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

*B. The ACLU qualifies as a representative of the news media.*

A waiver of search and review fees is warranted because the ACLU qualifies as a "representative of the news media" and the Revised Report is not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 32 C.F.R. § 1900.02(h)(3); 28 C.F.R. § 16.11(k); 32 C.F.R. § 286.28(d); 22 C.F.R. § 171.17. Accordingly, fees associated with the processing of this request should be "limited to reasonable standard charges for document duplication."

The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Nat'l Sec. Archive v. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *cf. Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is a "representative of the news media" for the same reasons that it is "primarily engaged in the dissemination of information." *See Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for FOIA purposes).[7] Indeed, the ACLU recently was held to be a "representative of the news media." *Serv. Women's Action Network v. Dep't of Defense*, No. 3:11CV1534 (MRK), 2012 WL 3683399, at *3 (D. Conn. May 14, 2012); *see also Am. Civil Liberties Union of Wash. v. Dep't of Justice*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding ACLU of Washington to be a "representative of the news media"), *reconsidered in part on other grounds*, 2011 WL 1900140 (W.D. Wash. May 19, 2011).

* * *

Pursuant to applicable statute and regulations, we expect a determination regarding expedited processing within ten (10) calendar days. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I); 32 C.F.R. § 1900.21(d); 28

[7] On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU. For example, in October 2013, the State Department granted a fee waiver to the ACLU with respect to a request for documents concerning the United States' targeting killing program. In June 2013, the National Security Division of the Department of Justice granted a fee waiver to the ACLU with respect to a request for documents relating to standards governing intelligence collection and the Division's interpretation of an executive order. Since at least 2002, government agencies ranging from the Department of the Navy to the Department of Commerce have granted the ACLU fee waivers in connection with its FOIA requests.

C.F.R. § 16.5(d)(4); 32 C.F.R. § 286.4(d)(3); 22 C.F.R. § 171.12(b).

If the request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable portions of otherwise exempt material.

We reserve the right to appeal a decision to withhold any information or to deny a waiver of fees.

Please furnish the applicable records to:

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Ashley Gorski
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

Thank you for your prompt attention to this matter.

I hereby certify that the foregoing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Ashley Gorski
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004
Tel: 212.284.7305
Fax: 212.549.2654
Email: agorski@aclu.org

# Exhibit D

APPROVED FOR RELEASE DATE: 14-Jan-2015

DIANNE FEINSTEIN, CALIFORNIA, CHAIRMAN
CHRISTOPHER S. BOND, MISSOURI, VICE CHAIRMAN

JOHN D. ROCKEFELLER IV, WEST VIRGINIA
RON WYDEN, OREGON
EVAN BAYH, INDIANA
BARBARA A. MIKULSKI, MARYLAND
RUSSELL D. FEINGOLD, WISCONSIN
BILL NELSON, FLORIDA
SHELDON WHITEHOUSE, RHODE ISLAND

ORRIN HATCH, UTAH
OLYMPIA J. SNOWE, MAINE
SAXBY CHAMBLISS, GEORGIA
RICHARD BURR, NORTH CAROLINA
TOM COBURN, OKLAHOMA
JAMES E. RISCH, IDAHO

HARRY REID, NEVADA, EX OFFICIO
MITCH McCONNELL, KENTUCKY, EX OFFICIO
CARL LEVIN, MICHIGAN, EX OFFICIO
JOHN McCAIN, ARIZONA, EX OFFICIO

DAVID GRANNIS, STAFF DIRECTOR
LOUIS B. TUCKER, MINORITY STAFF DIRECTOR
KATHLEEN P. McGHEE, CHIEF CLERK

~~SECRET~~

# United States Senate

SELECT COMMITTEE ON INTELLIGENCE
WASHINGTON, DC 20510-6475

June 2, 2009

The Honorable Leon Panetta
Director
Central Intelligence Agency
Washington, D.C. 20505

Dear Director Panetta:

In a letter dated March 26, 2009, the Senate Select Committee on Intelligence (the Committee) informed the Central Intelligence Agency (CIA) of its intention to conduct a thorough review of the CIA's detention and interrogation program. The letter included terms of reference approved by the Committee, as well as a document request.

To conduct our work in a comprehensive and timely matter, the Committee requires access to unredacted materials that will include the names of non-supervisory CIA officers, liaison partners, black-site locations, or contain cryptonyms or pseudonyms. We appreciate the CIA's concern over the sensitivity of this information. Our staff has had numerous discussions with Agency officials to identify appropriate procedures by which we can obtain the information needed for the study in a way that meets your security requirements. We agree that the Committee, including its staff, will conduct the study of CIA's detention and interrogation program under the following procedures and understandings:

1. Pursuant to discussions between the Committee and CIA about anticipated staffing requirements, the CIA will provide all Members of the Committee and up to 15 Committee staff (in addition to our staff directors, deputy staff directors, and counsel) with access to unredacted responsive information. In addition, additional cleared staff may be given access to small portions of the unredacted information for the purpose of reviewing specific documents or conducting reviews of individual detainees. These Committee staff have or will have signed standard Sensitive Compartmented Information non-disclosure agreements for classified information in the [redacted] compartment.

APPROVED FOR RELEASE DATE: 14-Jan-2015





2. CIA will make unredacted responsive operational files, as that term is defined in Section 701(b) of the National Security Act of 1947 (50 U.S.C. 431(b)), available at a secure Agency electronic Reading Room facility (Reading Room) which will permit Committee staff electronic search, sort, filing, and print capability.

3. If responsive documents other than those contained in operational files identify the names of non-supervisory CIA officers, liaison partners, or black-site locations, or contain cryptonyms or pseudonyms, CIA will provide unredacted copies of those documents at the Reading Room.

4. Responsive documents other than those contained in operational files that do not identify the names of non-supervisory CIA officers, liaison partners, or black-site locations, or contain cryptonyms or pseudonyms will be made available to the Committee in the Committee's Sensitive Compartmented Information Facility (SCIF), unless other arrangements are made.

5. CIA will provide a stand-alone computer system in the Reading Room with a network drive for Committee staff and Members. This network drive will be segregated from CIA networks to allow access only to Committee staff and Members. The only CIA employees or contractors with access to this computer system will be CIA information technology personnel who will not be permitted to copy or otherwise share information from the system with other personnel, except as otherwise authorized by the Committee.

6. Any documents generated on the network drive referenced in paragraph 5, as well as any other notes, documents, draft and final recommendations, reports or other materials generated by Committee staff or Members, are the property of the Committee and will be kept at the Reading Room solely for secure safekeeping and ease of reference. These documents remain congressional records in their entirety and disposition and control over these records, even after the completion of the Committee's review, lies exclusively with the Committee. As such, these records are not CIA records under the Freedom of Information Act or any other law. The CIA may not

APPROVED FOR RELEASE DATE: 14-Jan-2015





integrate these records into its records filing systems, and may not disseminate or copy them, or use them for any purpose without the prior written authorization of the Committee. The CIA will return the records to the Committee immediately upon request in a manner consistent with paragraph 9. If the CIA receives any request or demand for access to these records from outside the CIA under the Freedom of Information Act or any other authority, the CIA will immediately notify the Committee and will respond to the request or demand based upon the understanding that these are congressional, not CIA, records.

7. CIA will provide the Committee with lockable cabinets and safes, as required, in the Reading Room.

8. If Committee staff identifies CIA-generated documents or materials made available in the Reading Room that staff would like to have available in the Committee SCIF, the Committee will request redacted versions of those documents or materials in writing. Committee staff will not remove such CIA-generated documents or materials from the electronic Reading Room facility without the agreement of CIA.

9. To the extent Committee staff seeks to remove from the Reading Room any notes, documents, draft and final recommendations, reports or other materials generated by Committee Members or staff, Committee staff will ensure that those notes, documents, draft and final recommendations, reports or other materials do not identify the names of non-supervisory CIA officers, liaison partners, or black-site locations, or contain cryptonyms or pseudonyms. If those documents contain such information, Committee staff will request that CIA conduct a classification review to redact the above-referenced categories of information from the materials or replace such information with alternative code names as determined jointly by the Committee and the CIA.

APPROVED FOR RELEASE DATE: 14-Jan-2015





Any document or other material removed from the reading room pursuant to paragraphs 8, 9, or 10 will be stored in the Committee SCIF or transferred and stored on Committee TS//SCI systems, under Committee security procedures.

10. Any notes, documents, draft and final recommendations, reports or other materials prepared by Committee Members or Staff based on information accessed in the Reading Room will be prepared and stored on TS//SCI systems. Such materials will carry the highest classification of any of the underlying source materials. If the Committee seeks to produce a document that carries a different classification than the underlying source material, the Committee will submit that document to CIA, or if appropriate to the DNI, for classification review and, if necessary, redaction.

11. The Reading Room will be available from 0700 to 1900 hours, official government business days, Monday through Friday. If Committee staff requires additional time or weekend work is required, Committee staff will make arrangements with CIA personnel with as much advance notice as possible..

12. The Committee will memorialize any requests for documents or information in writing and CIA will respond to those requests in writing.

13. All Committee staff granted access to the Reading Room shall receive and acknowledge receipt of a CIA security briefing prior to reviewing CIA documents at the Reading Room.

APPROVED FOR RELEASE DATE: 14-Jan-2015

~~SECRET~~



We anticipate that agreement to these conditions will address your concerns about Committee access to unredacted materials responsive to the Committee's document request. We look forward to immediate staff access to those materials.

In addition, we expect that the discussions and agreements over access to the study information are a matter restricted to the Congress and the Executive branch. As such, neither this letter nor derivative documents may be provided or presented to CIA's liaison partners.

Sincerely,

Dianne Feinstein
Chairman

Christopher S. Bond
Vice Chairman

~~SECRET~~

# Exhibit E

Director of Office of Congressional Affairs

From: Grannis, D (Intelligence)
Date: 12/13/2012 05:18 PM
Subject: [redacted] SSCI report, reading
To: [redacted] Mark David Agrast [redacted]
Cc: [redacted]

Please respond to "Grannis, D (Intelligence)"

[***** Document has been archived. Click "Retrieve" button to retrieve document contents and attachments. *****]

CLASSIFICATION: UNCLASSIFIED

[redacted]

The SSCI approved today its report on CIA Detention and Interrogation.
Per the motion adopted by the Committee, we will be transmitting to the White House, the ODNI, the CIA, and the Department of Justice a limited number of hard copies of the report for review.
We will send an official transmittal letter tomorrow.
However, by explicit instruction of the Chairman, and as specified in the motion, we will only provide copies of the report to specific individuals who are identified in advance to the Chairman (through me).

Regards,

David

David Grannis

Staff Director

Senate Select Committee on Intelligence

[redacted]

# Exhibit F

# United States Senator Dianne Feinstein

**Apr 03 2014**

## Intelligence Committee Votes to Declassify Portions of CIA Study

*Washington*—Senate Intelligence Committee Chairman Dianne Feinstein (D-Calif.) released the following statement after the committee voted to declassify the executive summary and conclusions of its landmark report on the CIA's Detention and Interrogation Program:

**"The Senate Intelligence Committee this afternoon voted to declassify the 480-page executive summary as well as 20 findings and conclusions of the majority's five-year study of the CIA Detention and Interrogation Program, which involved more than 100 detainees.**

**"The purpose of this review was to uncover the facts behind this secret program, and the results were shocking. The report exposes brutality that stands in stark contrast to our values as a nation. It chronicles a stain on our history that must never again be allowed to happen.**

**"This is not what Americans do.**

**"The report also points to major problems with CIA's management of this program and its interactions with the White House, other parts of the executive branch and Congress. This is also deeply troubling and shows why oversight of intelligence agencies in a democratic nation is so important.**

**"The release of this summary and conclusions in the near future shows that this nation admits its errors, as painful as they may be, and seeks to learn from them. It is now abundantly clear that, in an effort to prevent further terrorist attacks after 9/11 and bring those responsible to justice, the CIA made serious mistakes that haunt us to this day. We are acknowledging those mistakes, and we have a continuing responsibility to make sure nothing like this ever occurs again.**

**"The full 6,200-page full report has been updated and will be held for declassification at a later time.**

**"I want to recognize the tireless and dedicated work of the staff who produced this report over the past five years, under trying circumstances. They have made an enormous contribution. I also thank**

**the senators who have supported this review from its beginning and have ensured that we reached this point."**

**<u>Background</u>**

The report describes the CIA's Detention and Interrogation Program between September 2001 and January 2009. It reviewed operations at overseas CIA clandestine detention facilities, the use of CIA's so-called "enhanced interrogation techniques" and the conditions of the more than 100 individuals detained by CIA during that period.

The executive summary, findings, and conclusions—which total more than 500 pages—will be sent to the president for declassification review and subsequent public release. President Obama has indicated his support of declassification of these parts of the report and CIA Director Brennan has said this will happen expeditiously. Until the declassification process is complete and that portion of the report is released, it will remain classified.

The Senate Intelligence Committee initiated the study of CIA's Detention and Interrogation Program in March 2009. Committee staff received more than 6 million pages of materials, the overwhelming majority of which came from the CIA, but also included documents from the Departments of State, Justice and Defense. Committee staff reviewed CIA operational cables, memoranda, internal communications, photographs, financial documents, intelligence analysis, transcripts and summaries of interviews conducted by the CIA inspector general while the program was ongoing and other records for the study.

In December 2012, the committee approved the report with a bipartisan vote of 9-6 and sent it to the executive branch for comment. For the past several months, the committee staff has reviewed all comments by the CIA as well as minority views by committee Republicans and made changes to the report as necessary to ensure factual accuracy and clarity.

###

---

Permalink: http://www.feinstein.senate.gov/public/index.cfm/2014/4/senate-intelligence-committee-votes-to-declassify-portions-of-cia-detention-interrogation-study