**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| AMERICAN CIVIL LIBERTIES UNION, and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:13-cv-01870 (JEB) |
| v. | ) ) | |
| CENTRAL INTELLIGENCE AGENCY, et al. | ) ) ) | |
| Defendants. | ) ) ) | |

## GOVERNMENT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

As the government explained in its opening brief, a congressionally-generated record

does not become an "agency record" within the meaning of FOIA unless the document has

"passed from the control of Congress and become property subject to the free disposition of the

agency with which the document resides." *Goland v. CIA*, 607 F.2d 339, 347 (D.C. Cir.

1978).  The record in this case makes it clear that the Full Report has not undergone that

transition.  The Senate Select Committee on Intelligence ("SSCI") created the Full Report under

conditions of confidentiality; it instructed the executive branch to treat the document as a

congressional record subject to congressional control; and it chose *not* to publicly release the Full

Report when it voted to release the stand-alone Executive Summary and Findings and

Conclusions.

The plaintiffs, in rebuttal, point to only one piece of arguably contrary evidence: letters

from the former SSCI Chairman encouraging the President to make the Full Report "available

within the CIA and other components of the Executive Branch for use as broadly as appropriate

to help make sure that this experience is never repeated."  But those letters cannot bear the weight the plaintiffs assign to them.  Although the letters encourage certain internal executive branch use of the Full Report, they do not purport to give executive branch agencies the ability to amend or release the report as they see fit; even if the letters had expressed such intent, they would have been inconsistent with prior communications from, and actions of, the Committee as a whole.

Throughout their opposition to the government's motion to dismiss, plaintiffs conflate the actions of the SSCI as a whole with the actions of individual members of that Committee, and invite the Court to take sides in this legislative dispute.  This Court, however, should resist undoing through litigation what the full SSCI decided through the legislative process.  Rather, it should conclude that the Full Report is not an agency record under FOIA, and should grant the government's motion to dismiss.[1]

## ARGUMENT

### I.      CONGRESS RESERVED CONTROL OVER THE FULL REPORT.

Plaintiffs' argument for release of the Full Report has two components.  They argue (1) that the Court should disregard the strong evidence of Congress's intent to reserve control over the Full Report and (2) that various communications from the former SSCI Chairman provide "direct, contemporaneous evidence" of Congress's contrary intent to "relinquish control of the Final Full Report."  Neither point has merit.

---

[1] Plaintiffs' Factual and Procedural Background section contains a number of characterizations that are entirely irrelevant to this motion.  *See, e.g.,* Pls.' Br. at 2-4, 6-8.  Those characterizations should be disregarded.

**A.       Plaintiffs Misstate the Test for Determining Congressional Intent.**

Plaintiffs advance a number of reasons why they believe the Court should disregard the

clear evidence, discussed in defendants' motion to dismiss, of Congress's intent to retain control

over the Full Report.  *See* Pls.' Br. at 17-24.  Those arguments suffer from a number of specific

flaws, *see infra* at 5-10, but they also appear to rest on a fundamental misunderstanding of what

evidence a court may consider in determining whether a record is a congressional record.  First,

Plaintiffs contend that any evidence of congressional control "must be contemporaneous with the

transmission of the document."  Pls.' Br. at 16.  That is incorrect.  The D.C. Circuit specifically

rejected that argument in *Holy Spirit*, stating that it was "*not* adopt[ing] appellant's position that

Congress must give contemporaneous instructions when forwarding congressional records to an

agency."  *Holy Spirit Ass'n for the Unification of World Christianity v. CIA*, 636 F.2d 838, 842

(D.C. Cir. 1980) (emphasis added). And the D.C. Circuit recently reaffirmed that holding in

*Judicial Watch*, where it relied heavily on a Memorandum of Understanding executed "well

before the creation and transfer of the documents at issue" in that case.  *Judicial Watch v. Secret

Service*, 726 F.3d 208, 223 n.20 (D.C. Cir. 2013).  There is no requirement that the Court limit its

review to evidence that was created contemporaneously with the transmission of the Full Report

to the executive branch.

Second, plaintiffs seem to suggest that a document can remain under congressional

control only if Congress explicitly tells the executive branch not to disseminate the document.

That, however, is also incorrect.  In *Holy Spirit*, the D.C. Circuit held that Congress need not

recite magic words or "act in a particular way" in order to "preserve its FOIA exemption for

transferred documents."  *Holy Spirit*, 636 F.2d at 842.  Rather, what is required are some clear

"indicia" of congressional intent to control the document. *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 600, 602, 605 (D.C. Cir. 2004); *Paisley*, 712 F.2d at 696. The Court can and should consider "all the facts of the case" to determine Congress's intent. *Goland*, 607 F.2d at 348.

Finally, and most importantly, plaintiffs suggest that the relevant inquiry is whether Congress placed restrictions on the executive branch's internal use of a congressional record. *See* Pls.' Br. at 17-18 ("By encouraging the use and dissemination of the Final Full Report among the executive branch, and by leaving to the executive branch the decision as to how "broadly" the report should be used within the agencies, the SSCI relinquished its control over the document."). That is not the standard, however. Congress can—and frequently does—share information with the executive branch on the understanding that relevant agencies can make appropriate internal use of the information but should not make it public. That does not mean that Congress has relinquished all control over the information. As the D.C. Circuit has noted, FOIA protects Congress's ability to share documents with the executive branch without fear that it will sacrifice its constitutional privilege of confidentiality. *See, e.g., Paisley v. CIA*, 712 F.2d 686, 693 n.30 (D.C. Cir. 1983); *Goland*, 607 F.2d at 346. The relevant inquiry, therefore, is not whether Congress authorized the executive branch to make some use of a document (*e.g.*, internal use or limited disclosure), but whether Congress authorized the executive branch to dispose of the document "as it wills" (*e.g.*, for full public release). *Goland*, 607 F.2d at 347; *see also United We Stand*, 359 F.3d at 600 (agency must have "*exclusive control* of the disputed documents" (emphasis added)) (citing *Paisley*, 712 F.2d at 693); *Judicial Watch*, 726 F.3d at 223 & n.19 (same). Applying that test, the D.C. Circuit has concluded that certain records were not "agency records," even though there was no apparent limitation on the agencies' internal use of

those records.  *See, e.g.*, *United We Stand*, 359 F.3d at 597 (committee stated that it was

providing a document to the IRS "for your use only" and prohibited disclosure, but did not

mention other restrictions on internal use of the document); *Goland*, 607 F.2d at 347 (CIA

retained copy of transcript for "internal reference purposes only," but there was no indication

that Congress placed limitations on internal use).

  **A.**  **Congress Clearly Intended to Retain Control Over the Full Report.**

  As set forth in the government's opening brief, both the circumstances of the Full

Report's creation and the conditions under which it was sent to the executive branch indicate

Congress' intent to retain control over the record.  Govt.'s Br. at 15-22.  Plaintiffs' efforts to

downplay this clear evidence of congressional intent fall short of the mark.

  Plaintiffs first contend that the June 2009 agreement between SSCI and the CIA does not

govern treatment of the Full Report because that agreement applied "only to documents residing

on the SSCI's network drive at the CIA's secure facility."  Pls.' Br. at 18-19.  But the agreement,

by its express terms, is not so limited.  It applies both to "documents generated on the network

drive" *and* "any other notes, documents, draft and final recommendations, reports or other

materials generated by Committee staff or members."  Higgins Decl., Ex. D ¶ 6.  That language

covers the Full Report, which is plainly a "final . . . report[] or other material[] generated by

Committee staff or members."  The broader prohibition makes sense, too.  While the plaintiffs

are undoubtedly correct that Congress was concerned that its work product not become subject to

FOIA simply because the information was stored on an executive branch computer system,

Congress was presumably also concerned about maintaining control over the time, place, and

manner of any final products' public disclosure—regardless of which computer systems housed

the documents.  That may be one reason why Congress limited access to the draft version of the

Executive Summary, even though it ultimately intended to publicly release that document.  In the

absence of any unambiguous congressional intent to the contrary, the government has

appropriately relied upon the 2009 agreement to inform treatment of all versions of SSCI's work

product.

Plaintiffs next ask the Court to ignore both the indicia of confidentiality surrounding the

creation of the Full Report (closed Committee sessions, classification markings, etc.) and the fact

that SSCI voted to publicly release the Executive Summary and Findings and Conclusions but

not the Full Report.  With respect to the indicia of confidentiality, however, the evidence here is

materially indistinguishable from the evidence in *Goland*.  In both cases, Congress met in closed

session and stamped its work product with a classification marking (which was derived from the

executive branch's classification system because Congress does not have its own classification

system).  That evidence supported the D.C. Circuit's conclusion in *Goland* that a transcript in the

executive branch's possession was a congressional record, and it can support the same

conclusion here.[2]

Plaintiffs similarly argue that the SSCI's decision to publicly release the Executive

Summary and Findings and Conclusions but not the Full Report is "irrelevant."  Pls.' Br. at 19,

22.  Quite to the contrary: It is one of the strongest indications that Congress did not intend to

publicly release the Full Report.  *See* Govt.'s Br. at 18.  Indeed, Congress's disparate treatment

---

[2] Because of the classification level of the Full Report, only a few individuals – even within the
Executive Branch – have the appropriate clearances to read and/or handle it.  *See, e.g.,*
Declaration of Peter J. Kadzik  ¶ 6 (noting that only he and one other staff member in the DOJ's
Office of Legislative Affairs had the appropriate clearances to handle the Full Report).

of the Executive Summary and Findings and Conclusions and Full Report is very similar to

evidence that the D.C. Circuit has found relevant on previous occasions. *See, e.g.*, *Paisley*, 712

F.2d at 694 (disparate treatment of similar documents was evidence of congressional intent);

*Holy Spirit*, 636 F.2d at 842 (same).

Plaintiffs argue that there is a difference between "classification" and "congressional

control" and suggest that the Full Report is merely classified, not under congressional control.

Pls.' Br. at 19.  But the two categories are not mutually exclusive.  Both classified and

unclassified documents can be subject to congressional control.  When Congress shares one of its

documents with the executive branch but deliberately chooses not to publicly release it, the

document does not slip from Congress's control simply because it happens to also contain some

classified information that originated in the executive branch.  At most, a document's classified

status may mean that both Congress and the executive branch must consent before the document

can be made public—that neither branch, in the D.C. Circuit's words, has "exclusive control"

over the document, *United We Stand*, 359 F.3d at 600.

Contrary to plaintiffs' suggestion, this does not "lead to absurd results."  Pls.' Br. at 21-

22.  Nor is it correct to suggest that the executive branch can escape the requirements of FOIA

by "pretend[ing]" that Congress has imposed restrictions on the agencies' use of classified

documents.  Pls.' Br. at 22.  It simply means that a court's fact-sensitive inquiry into

congressional intent should account for the possibility that Congress may not want to publicly

release a document, whether or not that document  contains classified information.  In this case,

the government is not arguing that the classification status of the Full Report itself necessarily

indicates congressional control over the document.  Rather, SSCI's handling of the Full Report,

combined with its decision to seek declassification and public release of the Executive Summary

and Findings and Conclusions but not the Full Report, are simply evidence of SSCI's intent not

to relinquish control over the Full Report.  And this evidence is particularly significant in light of

the absence of Committee action showing a contrary intent.  Had the Committee wished to

publicly release the Full Report, as plaintiffs claim that it did, it could have voted to do so.  The

Committee, however, made a reasoned determination not to pursue that path.  *See* Govt.'s Br. at

18.

Finally, plaintiffs' efforts to minimize the significance of Senator Burr's letter are largely

beside the point.  The government does not rely on the letter as affirmative evidence of

congressional intent.  Rather, the letter is relevant as an additional indicator that the Committee

has not relinquished control over the Full Report, and as a counterpoint to plaintiffs' argument

that the December 2014 transmittal of the Full Report was approved by the Committee as a

whole.

> **B.     The Former Chairman's Letters Are Consistent with a Committee
> Reservation of Control.**

In arguing that Congress relinquished control over the Full Report, Plaintiffs rely almost

exclusively on several letters and statements from the former SSCI Chairman Feinstein.  But

those communications address only the dissemination and use of the Full Report *within* the

Executive Branch.  As noted in the government's opening brief, the Chairman's language is

consistent with a reservation of control by SSCI.  Rather than providing the Full Report to the

Executive Branch for use and disposal as the Executive sees fit, Chairman Feinstein's letter

demonstrates that the Full Report was provided only for limited internal use.  As the government

pointed out in its opening brief, this is like the transcript in *Goland*, which was held not to be an

agency record. Govt.'s Br. at 20; *Goland*, 607 F.2d at 347. Indeed, as noted in *Goland*,

Congress has "an undoubted interest" in providing and exchanging documents with the agencies

over which it exercises oversight; provision of these documents for agency use in furtherance of

its oversight role should not be understood as a wholesale surrender of congressional control.

The Chairman's communications do not address, much less purport to authorize, whether the

Full Report should be publicly released. That is the relevant question. *See supra* at 4.

In addition, in this case, the Chairman's letters differ from prior actions of the Committee

in this matter, in that they do not appear to speak for the entire Committee. Plaintiffs concede

that the key consideration in determining whether a document transferred from Congress has

become an "agency record" is congressional intent. Pls.' Br. at 16 ("if Congress intends to

relinquish its control over the document, then the agency can use the document as it sees fit"). In

contending that SSCI "relinquished control over the Final Full Report," Pls.' Br. at 17, plaintiffs

fail to cite to any actions taken with respect to the Full Report by the Committee as a whole. The

actions of the Committee make clear that the Committee has not relinquished control over the

Full Report, reserving the right to submit it for declassification review and to publicly release it

at a later date.

Plaintiffs suggest that Chairman Feinstein's December 10, 2014 letter "contained no

indication that any SSCI member objected to SSCI's transmittal of the Final Full Report to

Defendants, nor did it indicate that the SSCI sought to impose any restrictions on the

dissemination of the Final Full Report either within or outside of the executive branch." Pls.' Br.

at 11. The last official action of the Committee with respect to the Full Report, however, was to

publicly release, on December 9, 2014, the SSCI Report's Executive Summary and Findings and

Conclusions, along with minority views and the additional views of various Committee members

– and *not* the Full Report.  *See* Higgins Decl. ¶ 20.  Plaintiffs offer no evidence otherwise; nor do

they offer any evidence that, in this instance, the former Chairman's December 10, 2014, letter

represented an action of the Committee as a whole. [3]

## II.     THE DEFENDANT AGENCIES CANNOT USE THE FULL REPORT AS THEY SEE FIT.

Relying again solely on the former Chairman's letters to the President, plaintiffs contend

that the defendant agencies are free to use and rely on the document as they see fit.  As discussed

above, however, this is not the case, as the Committee did not cede exclusive control over the

Full Report to the Executive Branch.  Accordingly, because "Congress has manifested its own

intent to retain control," the agency "cannot lawfully 'control' the documents."  *United We*

*Stand*, 359 F.3d at 600, 603. [4]

---

[3] Plaintiffs' argument that "all SSCI members were on notice that the Final Full Report would be transmitted to Defendants" fails for the same reasons.  Pls.' Br. at 22.  In any event, even if notice were the relevant consideration, it is simply not established that all SSCI members in fact knew that the Full Report was being transmitted to the Executive Branch for widespread dissemination.  *See* Jan. 16, 2015 Letter from former Chairman Feinstein to Barack Obama (noting only that all members of SSCI "received access" to December 10, 2014, transmittal letter through Committee's internal document system on the day it was sent); Jan. 14, 2015 Letter from Chairman Richard Burr to Barack Obama (stating that it had "recently come to my attention" that the Full Report had been transmitted to the Executive Branch on December 10, 2014).

[4] Aside from stating that the defendant agencies' treatment of the Full Report "is a litigation strategy entitled to no weight," plaintiffs do not even attempt to argue that an analysis of the third and fourth factors in the "agency record" test favors them.  Pls.' Br. at 16 n.8.  As set forth in the government's opening brief, however, neither the Department of Justice nor the Department of State has even opened the December 2014 package with the disc containing the updated version of the Full Report.  And the CIA and Department of Defense have made only limited use of that version.  Govt.'s Br. at 22.  This is consistent with Congress's reservation of control over the Full Report and supports dismissal of this claim.

**III.    POLICY REASONS WEIGH AGAINST A FINDING THAT THE FULL REPORT IS AN AGENCY RECORD.**

Perhaps because they have no real answer to them, plaintiffs attempt to make light of the "policy considerations unique to the congressional context," arguing that the agency records test is already drawn to accommodate such considerations.  Pls.' Br. at 17 n.9.  But the fact remains that there are important policy reasons not to require declassification and release of non-exempt information in the Full Report, reasons that are worthy of highlighting.

Here, as the defendant agencies have argued, SSCI made a decision not to send the Full Report for a declassification review, and has not relinquished control of the Full Report to the Executive Branch.  Requiring the declassification, processing, and release of non-exempt portions of the Full Report nonetheless would circumvent Congress's own decision not to seek declassification of the Full Report.  If and when the full Committee determines to seek declassification and review of the Full Report, it has the power to make that decision.  FOIA, however, should not be used a substitute for legislative consensus.  The Court, therefore, should conclude that the Full Report remains a congressional record until Congress decides otherwise, and should dismiss this count of plaintiffs' complaint.

## CONCLUSION

For the foregoing reasons, this Court should find that the Full Report is not an agency

record, and dismiss plaintiffs' FOIA claim for release of the Full Report.


Dated: March 4, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Acting Assistant Attorney General

RONALD C. MACHEN, Jr.
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Civil Division

 /s/ Vesper Mei
VESPER MEI (D.C. Bar 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, D.C.  20530
Telephone:  (202) 514-4686
Fax:  (202) 616-8470
E-mail: vesper.mei@usdoj.gov

*Counsel for the Government*